**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donald Leroy JENSEN, Defendant–
Appellant.**

No. 94–3863.

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1995.

Decided Nov. 9, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied Dec. 20, 1995.

**908**

Marlyn S. Jensen, Osceola, IA, argued, for appellant.

Richard Newberry, Asst. U.S. Atty., Minneapolis, MN, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, JOHN R. GIBSON and FAGG, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Donald Leroy Jensen appeals from his convictions for laundering money derived from the illegal distribution of drugs in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (1994); laundering money represented by a law enforcement officer to be proceeds of the illegal distribution of drugs in violation of 18 U.S.C. § 1956(a)(3)(B) and (C) (1994); and willfully failing to file a report of cash payments over $10,000 received in a trade or business as required by 26 U.S.C. § 6050I (1988)[1] in violation of 26 U.S.C. § 7203 (Supp. II 1990). He asserts twenty arguments that his convictions are unconstitutional or legally erroneous. We affirm the district court's[2] judgment.

Jensen was a co-owner and car salesman at Wells–Ford Mercury, Inc. in Wells, Minnesota. Carl Thompson, a drug dealer turned informant, testified that he approached Jensen about buying a car in 1987. Jensen told him it would be "no problem" to use cash, and Thompson bought approximately four pickups and four cars from Jensen from 1987 through 1992 using substantial amounts of cash. Early on, Jensen asked Thompson if he was using drug money to buy the cars, and Thompson said he was not.

Thompson testified that in September 1992, however, he told Jensen that he had made a lot of money selling marijuana. He explained that he and a couple of friends from California were "making a large amount of money" and wanted to buy cars with cash. Thompson testified that Jensen said that as long as they were not dealing in "hard drugs like heroin or cocaine, he didn't have that big a problem with it." In October 1992, Thompson bought a 1993 Ford Explorer from Jensen for $26,790. Thompson asked Jensen how much he could pay in cash. Thompson paid for the car by financing $5,590, paying $12,200 in money orders from different banks, and paying the rest in cash.

Thompson introduced Jensen to his friends from California: Ron Scoggins, Dan Holmes and Jim Sullivan. Scoggins and Holmes traveled to Minnesota and purchased cars from Jensen using cash and cashier's checks. Holmes purchased a truck for $21,000, paying $4,000 in cashier's checks and the rest in cash. Jensen did not file a Form 8300, a Report of Cash Payments over $10,000, as required by 26 U.S.C. § 6050I.

After Thompson and his friends had bought their cars, Jensen asked Thompson if he could borrow some money. Thompson told Jensen that he could make him a loan, but it would have to be in cash. Although Thompson noted the loan in his personal calendar, Thompson and Jensen did not record the loan or sign any documents memorializing the existence or terms of the loan. Thompson loaned Jensen $75,000, making

---

**1.** Later amendments to this statute do not affect our analysis.

**2.** The Honorable David S. Doty, United States District Judge for the District of Minnesota.

three cash payments to Jensen. Jensen used the money to build a home in Mankato, Minnesota. Jensen asked, and Thompson denied, that the cash was drug money.

On September 28, 1993, Thompson was arrested and he agreed to cooperate with the government. Thompson then began taping his conversations with Jensen. During these conversations, Jensen told Thompson that he hated the IRS and that the IRS was illegal. Thompson also made arrangements for an IRS agent, Billy Waters, to contact Jensen. Billy Waters used the name "Bill Fisher". Wearing a recorder, Waters negotiated the purchase of a 1993 Ford Explorer from Jensen. Waters initially told Jensen that he was a commodities broker, but later revealed that he had to go to Chicago to pick up marijuana. Waters also portrayed himself as a tax protester, telling Jensen that he did not pay taxes. In discussing how Waters would pay for the car, Jensen told Waters that if he paid more than "ten grand" in cash he had to "fill out one of those forms ... and I don't want to do that." Jensen advised Waters how to structure the purchase with cash and money orders. Waters purchased the car for $24,950, paying $6,950 in cash, and the rest in cashier's checks ($3,000 and $9,500) and money orders ($5,500).

Jensen was convicted on all counts and sentenced to forty-six months on each count, the sentences to run concurrently.[3] Jensen appeals.[4]

### I.

Jensen first argues that his conviction on Count II cannot stand because 18 U.S.C. § 1956(a)(3)(B) and (C) are unconstitutional, and that Congress has no power to enact these provisions. Jensen also argues that his conviction should be reversed for insufficient evidence and erroneous jury instructions. The basis for Count II is Waters' purchase of the Ford Explorer from Jensen with money represented to be proceeds of drug trafficking.

### A.

Section 1956(a)(3) prohibits a person from conducting a financial transaction involving property represented to be the proceeds of an unlawful activity. Jensen takes issue with the definition of "represented," which includes "any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section." 18 U.S.C. § 1956(a)(3). Jensen contends that the statute requires the government to misrepresent the source of the funds, pointing out that Waters did not use drug proceeds to buy the car, but funds requisitioned from the government for the investigation. He says that because the Constitution requires the faithful execution of all laws, Congress cannot authorize an agent to violate the law, and that Agent Waters violated 18 U.S.C. § 1001 and 26 U.S.C. § 7214 by falsely representing that he was using drug money to buy the car.

The Supreme Court approved of "sting" operations similar to the one here in *Jacobson v. United States*, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992). In that case, over a twenty-six month period, the government sent mail to the defendant offering child pornography. *Id.* at 542, 112 S.Ct. at 1537. When the defendant finally ordered the materials, he was convicted of receiving child pornography through the mails. *Id.* The Court reversed his conviction, reasoning that the government failed to prove that the defendant was predisposed to buy the pornography, independent of the government's extensive solicitation efforts. *Id.* at 554, 112 S.Ct. at 1543.

The Court acknowledged, however, that the government may use undercover agents to enforce the law. *Id.* at 548, 112 S.Ct. at 1540. "It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat

---

**3.** The court also ordered forfeiture of cash and real estate, and imposed a $25,000 fine.

**4.** Jensen also asks that we intervene in a pending Internal Revenue Service audit of his 1992 and

1993 federal tax returns. The IRS audit, however, is not part of the criminal case before this court.

the prosecution." *Id.* (quoting *Sorrells v. United States*, 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932)). Thus, if the agents had simply offered the defendant the opportunity to order child pornography through the mails, the defendant could not have established entrapment. *Id.* at 550, 112 S.Ct. at 1541.

Here, Jensen did not request a jury instruction on entrapment. It is questionable whether the court could have instructed on entrapment because entrapment is an issue only if there is sufficient evidence from which a reasonable jury could find entrapment. *Mathews v. United States*, 485 U.S. 58, 62, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988). The elements of entrapment are government inducement of the crime and a defendant's lack of predisposition to engage in the criminal conduct. *Id.* at 63, 108 S.Ct. at 886. Jensen does not argue that he lacked the predisposition to violate the law. *Cf. Jacobson*, 503 U.S. at 548–50, 112 S.Ct. at 1540–41.

In considering the constitutionality of section 1956, the Fourth Circuit ruled that the mere fact that the crime can only be committed with the cooperation of a government actor is not constitutionally damning. *United States v. McLamb*, 985 F.2d 1284, 1292 (4th Cir.1993). We therefore reject Jensen's argument that 18 U.S.C. § 1956(a)(3) is unconstitutional.

### B.

Along similar lines, Jensen argues that there was excessive government involvement in the undercover investigation. He contends that the government's investigation constituted outrageous conduct and that under due process he is entitled to an acquittal or a finding of entrapment as a matter of law. Again, Jensen argues that there can be no crime when the government supplies one of the necessary elements of the crime, and

that Agent Waters' purchase of the car with money he falsely represented to be drug money surpassed an investigation to create a crime and evidence.[5]

Although we question the wisdom of the continued investigation of Jensen for violating 18 U.S.C. § 1956 after the government already had ample evidence to support money laundering and failure to report charges, the government conduct does not amount to a due process violation. "The level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court." *United States v. Pardue*, 983 F.2d 843, 847 (8th Cir.) (per curiam) (citation and internal quotations omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 3043, 125 L.Ed.2d 728 (1993). The issue is one of law. *Id.*

The government's investigation of Jensen does not fall within the narrow band "of the most intolerable government conduct." *Pardue*, 983 F.2d at 847 (quoting *United States v. Musslyn*, 865 F.2d 945, 947 (8th Cir.1989)). The undercover investigation is authorized by *Jacobson*, 503 U.S. at 548–50, 112 S.Ct. at 1540–41, as well as 18 U.S.C. § 1956(a)(3). *See also United States v. Russell*, 411 U.S. 423, 436, 93 S.Ct. 1637, 1645, 36 L.Ed.2d 366 (1973) ("there are circumstances when the use of deceit is the only practicable law enforcement technique available"); *United States v. Allibhai*, 939 F.2d 244, 248–49 (5th Cir.1991) (rejecting outrageous conduct argument in connection with an undercover investigation of money-laundering scheme), *cert. denied*, 502 U.S. 1072, 112 S.Ct. 967, 117 L.Ed.2d 133 (1992). The investigation focused on Jensen's role in laundering drug money and complying with the reporting requirements of 26 U.S.C. § 6050I. Despite Jensen's contention, the agent did not violate any law; indeed, 18 U.S.C. § 1956(a)(3) per-

---

**5.** Jensen cites a recent Supreme Court decision, *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), as support for his argument that Congress had no power to enact section 1956. In *Lopez*, the Court struck down the Gun–Free School Zones Act, making it a federal offense to possess a firearm within 1000 feet of a school, as beyond the powers of Con-

gress under the Commerce Clause. *Id.* at ——, 115 S.Ct. at 1634. In enacting the money laundering statute, Congress exercised its authority not only under the Commerce Clause, but also under its authority to collect taxes, duties, imposts and excises. The reasoning of *Lopez* does not apply.

mits the agent to tell or imply to the target that the money is drug money. *See Jacobson,* 503 U.S. at 549, 112 S.Ct. at 1540 (approving agent's offer to buy or sell drugs during investigation); *Russell,* 411 U.S. at 431–32, 93 S.Ct. at 1642–43 (approving agent's infiltration and participation in drug ring).

■■■■ To demonstrate entrapment as a matter of law, the evidence must clearly indicate that a government agent originated the criminal design; that the agent implanted in the mind of an innocent person the disposition to commit the offense; and that the defendant then committed the crime at the urging of the government agent. *United States v. Kummer,* 15 F.3d 1455, 1459 (8th Cir.1994). To rule that there is entrapment as a matter of law, we focus on the defendant's predisposition to commit the crime, not on the investigative tactics employed. *Id.* at 1459 n. 9 (comparing defenses of entrapment and outrageous conduct). Jensen does not argue that the government agent originated the criminal design. Jensen's sales to other drug dealers and his advice to Waters on structuring his purchase undermines any argument that the agent created the criminal design. There is no basis for finding entrapment as a matter of law. *See Id.* at 1459.

### C.

■■■ Jensen also argues that the court erred in instructing the jury that the representation in Count II could be implied. The court instructed the jury:

> The term 'represented' does not require an explicit statement that the funds are the proceeds of illegal activity. It is sufficient that the government prove beyond a reasonable doubt that the law enforcement officer made the defendant aware of circumstances from which a reasonable person would infer that the property was drug proceeds.

At least three other circuits have ruled that a representation may be implied, and that the government agent is not required to specifically inform the defendant that the money in question is drug money. *See, e.g.,*

*United States v. Starke,* 62 F.3d 1374, 1382 (11th Cir.1995); *United States v. Castaneda-Cantu,* 20 F.3d 1325, 1331 (5th Cir.1994) (per curiam); *United States v. Kaufmann,* 985 F.2d 884, 892–93 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2350, 124 L.Ed.2d 259 (1993). The court did not err in instructing the jury that the representation could be implied.

### II.

Jensen argues that his conviction on Count I must be reversed because of insufficient evidence and erroneous jury instructions. The basis for Count I is Thompson's $75,000 loan to Jensen.

### A.

■■■ Jensen contends that there was insufficient evidence that he knew he borrowed drug proceeds from Thompson, and that he intended to conceal or disguise the source of the loan.

■■■■ We view the evidence in the light most favorable to the guilty verdict, giving the prosecution the benefit of all inferences reasonably drawn from the evidence. *United States v. Shedlock,* 62 F.3d 214, 219–20 (8th Cir.1995). We will affirm a conviction when any rational jury "could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

There is ample evidence to support the jury's verdict. Following Thompson's admission to Jensen that he had a "large return" from a marijuana smuggling deal, Jensen asked Thompson for a loan. Thompson agreed to make the loan, but told Jensen that he must make the loan in cash. Other than Thompson's calendar, there is no record of the $75,000 loan. From this evidence, a reasonable juror could conclude that Jensen knew that the loan came from Thompson's marijuana dealings, and that the loan was designed to conceal the source of Thompson's cash. *See United States v. Walcott,* 61 F.3d 635, 638 (8th Cir.1995).

## B.

Jensen also argues that his conviction on Count I must be reversed because the district court erred in instructing the jury on willful blindness.[6] Jensen contends that the government cannot rely on willful blindness to prove that he knew that the loan came from drug proceeds because the government claimed he had actual knowledge that the $75,000 was drug money. He also contends willful blindness is constitutionally repugnant on several grounds, because it switches the burden of proof and requires him to prove that he is guiltless.

"A willful blindness instruction is appropriate when the defendant asserts a lack of guilty knowledge, but the evidence supports an inference of deliberate ignorance." *United States v. Long*, 977 F.2d 1264, 1271 (8th Cir.1992) (citations and internal quotation omitted). "[I]n reviewing a district court's decision to give a willful blindness instruction, we must review the evidence and any reasonable inference from that evidence in the light most favorable to the government." *Id.* (quoting *United States v. Hiland*, 909 F.2d 1114, 1131 (8th Cir. 1990)). Jensen claimed that he did not know Thompson was a drug dealer, and the basis for this prosecution was Jensen's objection to the IRS. Jensen relied on a lack of guilty knowledge, and we conclude the evidence was sufficient to support an inference of deliberate ignorance. Thus, the court did not err in instructing the jury on willful blindness.

## III.

Jensen also argues that his conviction on Count III cannot stand because 26 U.S.C. §§ 6050I and 7203 are unconstitutional, both facially and as applied. Jensen suggests that the statutes are vague and allow for selective prosecution.

We reject this argument. An ordinary person is able to understand the conduct prohibited by the statutes. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). The statutes require proof that the defendant knew of the reporting requirement and acted with specific intent to circumvent the requirement. 26 U.S.C. § 6050I. The statutes are not void for vagueness. *See United States v. Parshall*, 757 F.2d 211, 215 (8th Cir.1985) (statute proscribing willful failure to file federal income tax returns is not unconstitutionally vague).

## IV.

Finally, a dispute exists over the production of a December 21, 1993 tape made by Agent Waters.

While fitting Waters with his recording device, another agent inadvertently activated the recorder. The tape recorded about 3½ hours of conversations between Waters and other agents as they drove from St. Paul to Wells. The tape ran out before Waters completed his discussions with Jensen. Shortly after discovering that he did not tape the entire encounter with Jensen, Waters prepared a report memorializing the complete December 21 conversation with Jensen.

At trial, the government produced the cassette, as well as the transcript of the tape beginning when Waters met with Jensen. The government did not make or produce a tape covering the period when the recorder was inadvertently activated. Consulting his report, Waters testified about his discussions with Jensen after the tape ran out.

After Jensen cross-examined Waters, the government wanted to produce the complete tape. Until trial, Jensen did not know that a complete tape existed. The prosecutor stat-

---

6. The court instructed the jury:

The element of knowledge required by Count I may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him. A finding beyond a reasonable doubt of a conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact.

It is entirely up to you as to whether you find any deliberate closing of the eyes, and the inferences to be drawn from any such evidence. A showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge.

ed that she would make a cassette from the tape and provide it to Jensen's counsel. Jensen alleged a violation of Federal Rule of Criminal Procedure 16 because of the government's failure to produce the complete tape. The judge stated that there was no Rule 16 violation because Jensen received what he was entitled to receive.

Despite the government's offer to produce the entire tape at trial, the government never produced the complete tape. At sentencing, Jensen renewed his motion to compel production of the complete tape. The court ordered the government to furnish the complete tape for the court's record and for the purpose of an appeal. The government agreed to produce the complete tape but asked to "make sure there is nothing on it that we would be concerned about [unrelated] to this case." The court conditionally ordered production of the complete tape.

The government then filed a motion to redact the tape. After promising to provide the complete tape, the government learned that the complete tape contained "objectionable and sensitive matters unrelated to the case." The accompanying affidavit explains that during the time the tape was inadvertently activated, the agents discussed four topics which the government sought to redact: a discussion of investigative techniques; a personal conversation of a sexual nature; a discussion of the suicides of an agent's relatives; and a discussion of other investigations. The government provided the court with an unredacted copy of the complete tape (which is actually a set of five cassette tapes).

The district court recognized that Rule 16 requires the production of all statements of the defendant as well as any information which is material to the defendant's preparation of a defense or which the government intends to use as evidence in chief at trial. Fed.R.Crim.P. 16. The court rejected Jensen's argument that the government's failure to produce the complete tape constituted circumstantial evidence showing the conversation testified to by Agent Waters did not occur. The court found that the tape included personal information about several undercover agents as well as agency sensitive information regarding investigative techniques. The court ordered redaction of those discussions. As suggested by the government, the court ordered that a complete set of tapes be sealed and made part of the record, and that a redacted set of tapes be filed as part of the public record and served on defendant.

At oral argument, Chief Judge Arnold asked the Assistant United States Attorney whether the government provided the complete tape to the district court and whether the government produced what they were ordered to produce. The attorney could not answer the question and Chief Judge Arnold asked for a letter of clarification. The Assistant United States Attorney wrote the court stating that the government filed a complete set of tapes under seal and a redacted set of tapes as part of the public record. The attorney did not state whether the government had served Jensen with the redacted set of tapes. Jensen's attorney wrote the clerk's office, stating that the government had not served Jensen with the tapes. After the clerk of this court attempted to verify whether the government had served the redacted tapes, the Assistant United States Attorney wrote another letter conceding that although the redacted tapes have been available as part of the district court file, through inadvertence, the redacted tapes had not yet been served on Jensen. The attorney stated that the tapes were sent to Jensen's counsel on that day.

Jensen argues that the district court erred in allowing Waters to testify from the memorandum he prepared after discovering he did not record his entire conversation with Jensen. Jensen also argues that the court erred in excusing the production of the tape.

■ The court did not abuse its discretion in allowing Waters to testify about his unrecorded conversations with Jensen and by allowing him to consult his report. *See* Fed. R.Evid. 612.

■ It is difficult to discern whether Jensen seeks a reversal of his conviction because of a Rule 16 violation or because of a *Brady* violation. Insofar as Jensen argues error or abuse of discretion in the court's redaction of the tapes, we conclude that the court did not err or abuse its discretion in ordering redaction. The district court reviewed the com-

plete set of tapes and found it appropriate to redact those sections discussing the agent's personal conversations, conversations about investigative techniques and other unrelated investigations. Of these topics, only the discussion of investigative techniques could potentially have any bearing on Jensen's defense. We have reviewed the redacted sections of the tapes, and, like the district court, are satisfied that the redacted sections have no relevance to this case. *See United States v. Manthei,* 979 F.2d 124, 126–27 (8th Cir. 1992). Thus, the court did not err or abuse its discretion in ordering redaction.

■ Jensen's argument with respect to the production of the tapes, however, is more troublesome. Despite a court order to serve Jensen with a redacted set of tapes and a request from this court seeking clarification of whether the government served Jensen with the tapes, we did not receive confirmation as to whether Jensen was ever served with the tapes until after the clerk's office contacted the Assistant United States Attorney. The government's failure to serve Jensen with the redacted tapes, despite a court order to do so, may well be the basis for sanctions. We think this issue is one best addressed first by the district court. Accordingly, we remand the case to the district court for a determination of whether the breach of the district court's order warrants sanctions.

### V.

Jensen raises a number of other arguments, including the arguments that his prosecution was based upon the exercise of his First Amendment rights, specifically, his objection to the IRS, and that he was denied a public trial due to the use of jury headsets to hear tape recordings. He also complains about errors in admitting evidence and in sentencing. After carefully reviewing these arguments, we conclude that they are without merit and warrant no further discussion.

We affirm Jensen's convictions. We remand the case for further proceedings consistent with this opinion.