# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1768

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Charles I. Covey, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  September 15, 2000
Filed:  November 16, 2000

_____

Before WOLLMAN, Chief Judge, LOKEN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Charles Covey was convicted by a jury of conspiracy to commit money laundering and aiding and abetting money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(h), and 1956 (a)(2).  The district court[1] entered a preliminary forfeiture order for $70,000 pursuant to 18 U.S.C. § 982 and Fed. R. Civ. P. 32(d)(2); it later denied Covey's motion for reconsideration or clarification.  Covey was sentenced to 57 months imprisonment and a $19,118.44 fine.  Covey now appeals his

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

conviction, sentence, and the preliminary order of forfeiture. We affirm the judgment and dismiss the forfeiture appeal as premature.

Charles Covey was a certified public accountant (CPA) and sole officer, director and shareholder of MCM Enterprises, Inc. (MCM). His sister, Mary Closser, asked him to speak to Gary and Darrell Hart about making them a loan. The Harts were drug dealers who sold and distributed marijuana and who wanted to use cash proceeds from their drug business to start a motorcycle sales and repair shop. They were unable to use more than $10,000 cash to buy inventory for the shop without filing federal forms so they were looking for ways to launder their money. The Harts rewarded Closser for connecting them with Covey by paying for a new driveway in front of her house.

During spring 1993 Covey and the Harts had a series of meetings, and Covey agreed to loan the Harts $50,000 through MCM in exchange for their $70,000 cash payment to him. During one meeting Gary Hart told Covey that the cash was from drug proceeds. On June 9, 1993 the parties executed a loan agreement prepared by Covey. The agreement provided that MCM would loan Hart Independence Motorcycles $50,000 at a 13% annual interest rate and the latter would pay MCM $3,072.38 per month for 18 months. The agreement was signed by Covey as president of MCM. Deena Rauscher, Gary Hart's wife, signed the agreement for herself and Sharon Hart, Darrell Hart's wife, who was not present. Darrell Hart signed as a guarantor.

The loan agreement represented that the inventory of the motorcycle business was to be collateral for the loan. The inventory did not yet exist, however, and Covey did not take a security interest in the later-acquired inventory. Instead, the Harts met Covey one night in a restaurant parking lot where they gave him a paper bag containing $70,000 in bills. The money was in one thousand dollar stacks held together with rubber bands. Contrary to the recitation in the loan agreement, the coconspirators agreed that the collateral for the principal of the loan was $50,000 in cash, $10,000 was collateral for interest, and $10,000 was termed a loan origination fee.

-2-

After the agreement was signed, Covey sent the Harts a $50,000 check, which the Harts deposited in an account under the name of Hart Independence Motorcycles. Covey had not required any financial, tax, or employment information from the Harts. Neither did he file a federal form reporting his receipt of over $10,000 in cash from the Harts. Between July 2, 1993 and January 1994, the Harts made six payments on the loan, totaling $18,441.31. Covey put these payments into MCM's account and then withdrew corresponding amounts for deposit into his personal account.

The motorcycle business was not a success, and the Harts stopped making payments on the loan after January 1994. On October 3, 1994, Covey sent a letter informing the Harts that the loan was in default and that he would begin taking payments from the cash collateral. Thereafter, Covey began to deposit currency from the $70,000 cash payment into MCM's bank account. He deposited approximately $36,000 from these funds and later transferred the money to his personal account.

In December 1995, Covey sent a check for $19,561.86 by certified mail to Darrell Hart with the notation "Refund Excess Loan Collateral." The Harts suspected that Covey was cooperating with law enforcement, and they did not retrieve the mail from the post office. About that time, Covey filed an Internal Revenue Service Form 8300 to report receipt of more than $10,000 in a cash transaction. Covey reported that MCM Enterprises had received $70,000 cash in return for a loan of $50,000 and checked the "suspicious transaction" box on the form. Unlike the loan agreement, which stated that the motorcycle shop inventory was collateral for the loan, the form reported that $60,000 in cash was received as collateral and that the remaining $10,000 was a loan fee.

On December 15, 1998, a federal grand jury returned a three count indictment against Covey. Count I charged Covey with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Count II charged Covey with aiding and abetting money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (2). Count III

sought forfeiture of $70,000 from Covey under 18 U.S.C. § 982. On July 28, 1999, the district court dismissed Count I on the grounds that the count did not adequately apprise the defendant of the charge. On August 9, 1999, a grand jury filed a superseding indictment which restated all three counts and added factual allegations to the conspiracy charge in Count I.

At trial, the jury was given an instruction on conspiracy, which read in pertinent part:

> It is not necessary that the government prove, beyond a reasonable doubt, that more than one act was done in furtherance of the conspiracy. It is sufficient if the government proves beyond a reasonable doubt, one such act; but in that event, in order to return a verdict of guilty, you must unanimously agree upon which act was done.

Jury Instruction 19.

The jury returned a guilty verdict on all three counts, including the forfeiture count. The district court then entered a preliminary order requiring Covey to forfeit $70,000. Covey objected that he had not had sufficient notice or opportunity to be heard and that the amount of the forfeiture was excessive. The district court denied his motion for reconsideration or clarification and sentenced him to 57 months and a $19,118.44 fine. The court found that Covey had used special skills and experience in accounting and finance to further the money laundering scheme and added two levels to his adjusted offense level, resulting in a guideline range of 57 - 71 months. Covey moved for a new trial, judgment of acquittal, arrest of judgment, and a stay of further seizures and accounting of seized assets. The motions were denied. Covey paid over the $70,000 and received a document entitled "Satisfaction of Judgment" on June 5, 2000.

-4-

Covey raises a variety of issues on appeal, including insufficient evidence, incomplete jury instructions, and violation of his Fifth and Sixth Amendment rights. He also challenges his conspiracy conviction on the grounds that Count I of the superseding indictment did not allege an overt act in furtherance of the conspiracy, an element he asserts is essential to the charge. He objects to the preliminary order of forfeiture, arguing that he was not given adequate notice or an opportunity to be heard and that the amount was excessive. He contends that the district court erred when it enhanced his sentence for use of special skills in furtherance of the money laundering scheme. The government counters all points. It argues an overt act is not an essential element of a money laundering offense, that the language of the money laundering statute, 18 U.S.C. § 1956(h),[2] is nearly identical to that for drug conspiracies, 21 U.S.C. § 846,[3] which does not require an overt act be proven as an element of the offense, see United States v. Shabani, 513 U.S. 10, 12 (1994); United States v. Severe, 29 F.3d 444, 447 (8th Cir. 1994), cert. denied, 513 U.S. 1096 (1995). Since 18 U.S.C. § 1956(h) was modeled on 21 U.S.C. § 846, it should be given a similar construction. The government argues that this court does not have jurisdiction to hear Covey's appeal of the preliminary forfeiture order because it is not a final order, that Covey had adequate advance notice and a sufficient hearing, and that the amount was not excessive. The government asserts that the special skills enhancement was appropriate, the evidence was sufficient, and there is no merit to Covey's other arguments.

I.

---

[2]"Any person who conspires to commit any offense defined in this section . . . shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." 18 U.S.C. § 1956(h) (2000).

[3]"Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846 (2000).

A challenge to the sufficiency of an indictment is reviewed de novo. See United States v. O'Hagan, 139 F.3d 641, 651 (8th Cir. 1998). Count I of the superseding indictment charged:

> That between August, 1992, up to January, 1996, said dates being approximate, in the Western District of Missouri, CHARLES I. COVEY and MARY ANN CLOSSER, defendants herein, did knowingly and intentionally combine, conspire, confederate and agree with each other and other persons, both known and unknown to the grand jury, to willfully conduct and attempt to conduct, financial transactions affecting interstate commerce, including the transfer of approximately $50,000 from CHARLES I. COVEY to the bank account of Hart Independence Motorcycles, Inc., and the transfer of approximately $19,561.86 by a check drawn on the checking account of MCM Enterprises, Inc.; knowing that the transactions were assigned in whole or in part, to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, that is the distribution of marihuana; and that while conducting and attempting to conduct the financial transactions knew that the property involved in the transactions represented the proceeds of some form of unlawful activity . . . .

Superseding indictment at 1-2.

An indictment is not required to take a particular form and should not be read in a "hyper-technical fashion." See id. It should be "deemed sufficient 'unless no reasonable construction can be said to charge the offense.'" United States v. Morris, 18 F.3d 562, 568 (8th Cir. 1994) (citation omitted). Here, a fair reading of Count I was sufficient to notify Covey that the transfers of checks in the amounts of $50,000 and $19,561.86 were acts the government alleged he performed in furtherance of the money laundering conspiracy.

-6-

The offense of money laundering is described in this way in the statute :

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956 (a)(1)(B)(i) (2000). Here, the object of the conspiracy was to conceal the nature of the Harts' drug proceeds. Covey committed acts in furtherance of that conspiracy when he gave the Harts checks in return for cash that he knew was derived from illegal activities. See United States v. Norman, 143 F.3d 375, 377-78 (8th Cir. 1998). Count I charged him with knowingly conducting a financial transaction designed to disguise the source of illegal proceeds by transferring $50,000 and $19,561.86 checks to Hart Independence Motorcycles. It thus alleged overt acts in furtherance of the conspiracy. See United States v. Hutchinson, 488 F.2d 484, 490 (8th Cir. 1973) (an overt act is "an act of one or more of the conspirators to effect the object of the conspiracy" (citation omitted)).

## II.

Federal Rule of Criminal Procedure 32(d)(2) provides that "the court may enter a preliminary order of forfeiture after providing notice to the defendant and a reasonable opportunity to be heard on the timing and form of the order." The preliminary order is not a judgment or a final order. See United States v. Coon, 187 F.3d 888, 901 (8th Cir. 1999), cert. denied, 120 S.Ct. 1417 (2000). Rather, the forfeiture becomes final when "a final order of forfeiture shall be made part of the

sentence and included in the judgment." FED. R. CRIM. P. 32(d)(2). After the order of forfeiture is included in the judgment, the preliminary order is appealable as part of the judgment. See Coon, 187 F.3d at 901.

In this case no final order of forfeiture was included in the judgment. The judgment indicates that the jury returned a guilty verdict on Count III, but makes no other reference to the forfeiture. The space after the preprinted section with the heading "The defendant shall forfeit the defendant's interest in the following property to the United States:" was left blank. No forfeiture amount is mentioned in the judgment. Covey complied with the court's preliminary post verdict order to forfeit $70,000, and the government conceded at oral argument that he still has a right to question the amount for which he should finally be held accountable.[4] We do not have jurisdiction when no final forfeiture order or judgment has been entered so the appeal must be dismissed as premature. See id. (citing United States v. Casas, 999 F.2d 1225, 1231-32 (8th Cir. 1993), cert. denied, 510 U.S. 1078 (1994)).

## III.

The sentencing guidelines provide for an enhancement of two levels if "the defendant . . . used a special skill, in a manner that significantly facilitated the commission or concealment of the offense . . . ." U.S. SENTENCING GUIDELINES MANUAL § 3B1.3 (1998). "'Special skill' refers to a skill not possessed by members of

_____

[4]The concurrence suggests that Covey would not be liable for the full $70,000 if the Harts forfeit some part of that amount. The cases cited by the concurrence indicate, however, that in criminal forfeiture all coconspirators may be liable for the full amount of the proceeds involved in the criminal enterprise. See, e.g., United States v. McHan, 101 F.3d 1027, 1042 (4th Cir. 1996) (citing with approval cases that indicate that cumulative forfeitures may be permissible). In any event, Covey will have an opportunity to be heard on remand before a final forfeiture judgment is entered against him.

the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." Id. at cmt. 3.

Covey argues that the two level enhancement to his sentence was inappropriate because he did not use any special skills to make the loan to the Harts. A district court's factual determination that the defendant used special skills in the commission or concealment of the offense is reviewed for clear error. See United States v. Graham, 60 F.3d 463, 468 (8th Cir 1995); United States v. Garfinkel, 29 F.3d 1253, 1261 (8th Cir. 1994). The sentencing judge presided at Covey's three day trial and had an opportunity to hear and see the witnesses and make credibility assessments. He determined that Covey had used his special skills as a CPA to effectuate the money laundering scheme, finding that Covey had been a CPA since 1972, that he had skills and experience in accounting and finance, that he had prepared an amortization schedule, a loan agreement and other loan-related financial documentation, and that he had used multiple bank accounts in order to carry out the scheme. Because the district court did not clearly err, we will not disturb its factual findings. See Koon v. United States, 518 U.S. 81, 97 (1996).

Covey claims that members of the general public can prepare loan documents and amortization tables and that he used a loan document program to prepare them. The legal question is not whether the task could be performed by a person without special skills, but whether the defendant's special skills aided him in performing the task. See United States v. Noah, 130 F.3d 490, 500 (1st Cir. 1997) (tax preparer used special skills in fraudulently filing online tax returns); United States v. Lewis, 41 F.3d 1209, 1214 (7th Cir. 1994) (truck driver employed specialized driving skills during a theft); United States v. Fritzson, 979 F.2d 21, 22 (2d Cir. 1992) (accountant used special skills in filing fraudulent tax returns for his children). There is no requirement in the guidelines that the enhancement for use of special skills be used only for complex tasks. See Noah, 130 F.3d at 500. Since Covey's special skills assisted him in

conspiring with the Harts and in aiding and abetting money laundering, we affirm the application of the special skills enhancement in this case.

## IV.

Covey's other arguments do not require much discussion. He asserts that the district court should have granted his motions for judgment of acquittal or for a new trial on the grounds that there was insufficient evidence to convict him on any of the three counts. A denial of a motion for acquittal based on insufficiency of evidence is reversed only if the evidence, viewed in the light most favorable to the government, is such that a reasonable jury must harbor a reasonable doubt that the defendant was guilty of the crime charged. See United States v. Martinez, 168 F.3d 1043, 1047 (8th Cir. 1999). The denial of a new trial is reviewed for clear and manifest abuse of discretion. See United States v. Lacey, 219 F.3d 779, 783-84 (8th Cir. 2000). Covey's claims of insufficiency are without merit since there was ample evidence to support the verdicts and no showing that a new trial was needed.

Covey claims that the district court erred when it failed to give certain jury instructions at trial, but he did not raise these claims at trial so they are reviewed for plain error. See United States v. Jorgensen, 144 F.3d 550, 560 (8th Cir. 1998). Covey argues that the district court should have given the jury an instruction on willfulness in conjunction with Count I, an instruction defining "attempt" in conjunction with Counts I and II, an instruction that a guilty verdict on each count of the indictment must be supported by unanimity, a good faith instruction, and an instruction that an overt act was an essential element of Count I. The district court did not err in omitting any of these instructions. No willfulness instruction was required because the requisite state of mind for both conspiracy and money laundering is knowledge. See, e.g., United States v. Madrid, No. 99-4060NI, 2000 WL 1294323, at *3 (8th Cir. Sept. 14, 2000); United States v. Jensen, 69 F.3d 906, 911 (8th Cir. 1995). Covey was not charged with attempt to commit money laundering so it was not necessary to instruct on attempt. A

general unanimity instruction is usually sufficient to protect a defendant's right to a unanimous verdict,  see United States v. Davis, 154 F.3d 772, 783 (8th Cir. 1998), and we find no plain error in the lack of a specific unanimity instruction in this case.  As the appellant concedes, good faith instructions generally are not given in money laundering cases.  Finally, a sufficient instruction on an overt act requirement was given.

Covey argues that his Fifth Amendment rights were violated when the district court allowed the government to use documents that he had produced.  It has long been established that it is generally not unconstitutional to use the contents of documents prepared and produced by a criminal defendant.  See United States v. Doe, 465 U.S. 605, 611-12 (1984).

Covey also claims that the district court erred in denying his motion for an evidentiary hearing to determine whether he was deprived of his Sixth Amendment right to effective counsel.  A claim of ineffective assistance usually requires the examination of facts outside the original record so it is more appropriately raised in a collateral proceeding under 28 U.S.C. § 2255.  See, e.g., United States v. Martin, 59 F.3d 767, 771 (8th Cir. 1995); Kelly v. Crunk, 713 F.2d 426, 427 (8th Cir. 1983) (per curiam).

V.

Covey has not shown that he is entitled to a judgment of acquittal, a new trial, or resentencing.  We affirm the judgment of the district court and dismiss the appeal of the preliminary forfeiture order as premature.

LOKEN, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from Part III of the court's opinion, which affirms the imposition of an upward special skills sentencing adjustment.  I concur in the court's

disposition of the forfeiture issue but for reasons not addressed in Part II. In all other respects, I join the court's opinion.

I.

In Part III, the court affirms the district court's finding that Covey used his special skills as a CPA to effectuate the money laundering offense. The court frames the issue as being "whether the defendant's special skills aided him in performing the task." Ante at p. 9. That understates the government's burden in proving this role-in-the-offense adjustment. The Guidelines provide for a two-level upward adjustment if the defendant "used a special skill, in a manner that *significantly facilitated* the commission or concealment of the offense." U.S.S.G. § 3B1.3 (emphasis added); see United States v. Graham, 60 F.3d 463, 468 (8th Cir. 1995). Applying this more stringent standard, I conclude the district court's finding was clearly erroneous.

The Sentencing Commission included accountants in its examples of persons who possess the requisite special skills. See U.S.S.G. § 3B1.3, comment. (n.3). But the question is whether Covey used those skills to significantly facilitate the money laundering loan transaction. The drug dealers, Gary and Darrell Hart, did not seek out Covey for his accounting skills. They dealt with him as a lender, and Covey made the loan through his personal investment company, MCM. The district court reasoned that Covey used his special training and experience in creating a loan amortization schedule and in documenting the loan transaction. In fact, Covey used a computer program to generate the amortization schedule and loan documentation. Such resources are readily available to any lender such as MCM, and are doubtless available to any layman wishing to make an isolated loan to a friend or acquaintance. Thus, the record does not support a finding that Covey used his special skills as a CPA to significantly facilitate the *commission* of the offense. Compare United States v. Hemmingson, 157 F.3d 347, 359-60 (5th Cir. 1998); United States v. Foster, 876 F.2d 377, 378 (5th Cir. 1989).

-12-

The record also contains no evidence that Covey used his CPA skills to significantly facilitate the *concealment* of the money laundering offense. Indeed, the evidence was to the contrary. Covey attempted to conceal his receipt of cash collateral by having the loan documents grant MCM a security interest in the Harts' motorcycle shop inventory. But the loan was made before the inventory was acquired, and the loan documents failed to include a routine provision extending the lender's security interest to after-acquired inventory. In addition, when Covey sought legal advice in December 1995 (long after the June 1993 loan), counsel advised him to file an IRS Form 8300, a cash transaction report that must be filed by persons who receive more than $10,000 cash in a transaction entered into in the course of their trade or business. I have little doubt that a sophisticated money launderer would have known the cash transaction reporting requirements and would have attempted to structure the loan to the Harts so as to avoid those requirements. Absent proof by the government to the contrary, these facts suggest either that Covey was an incompetent CPA, or that after-acquired security interests and cash transaction reports are not part of a CPA's special knowledge and skill, or that Covey had the knowledge and skill but did not apply them to this transaction. No matter which inference is accurate, the upward special skills adjustment is unwarranted.

By ignoring uncontroverted evidence that Covey either did not have or did not use special CPA skills to significantly facilitate this offense, the district court and this court have impermissibly broadened § 3B1.3 to increase Covey's sentence based on his mere status as a CPA. I respectfully dissent in part.

II.

Although I agree with the result reached by the court in Part II of its opinion, I find the forfeiture issue more difficult than the court acknowledges. One principle has been established -- in this circuit, a preliminary forfeiture order is not appealable as a final order or judgment. See United States v. Coon, 187 F.3d 888, 901 (8th Cir. 1999),

-13-

cert. denied, 120 S. Ct. 1417 (2000); contra United States v. Christunas, 126 F.3d 765, 768 (6th Cir. 1997). But here, after entering a preliminary order forfeiting "$70,000 in United States currency," the district court entered a final Judgment reciting that Covey had been found guilty of "Criminal Forfeitures." When a forfeiture is included in the final judgment, "prior case law would suggest that the preliminary order of forfeiture is an appealable part of the judgment." Coon, 187 F.3d at 901; accord United States v. Pelullo, 178 F.3d 196, 202 (3d Cir. 1999), and cases cited.

As the court notes, Covey's final Judgment does not specify what property was forfeited. But the preliminary order forfeited Covey's interest in $70,000 of currency, which of course is fungible property. The preliminary order and the final Judgment together surely give the government as judgment creditor the right to proceed against the forfeited property. And that is precisely how the parties interpreted the situation. After entry of the final Judgment, Covey appealed and moved this court for an order staying the criminal forfeiture. The government opposed that motion, arguing that it should be permitted as a judgment creditor to immediately seize the forfeited property. We denied the motion for stay, Covey paid the forfeited amount, and the government filed a satisfaction of judgment. In these circumstances, Coon and Pelullo apply and make the forfeiture order final and appealable.

But there is another wrinkle to the problem, one that has not yet been addressed in the evolving law of criminal forfeitures. On appeal, Covey does not challenge the sufficiency of the government's forfeiture evidence. Nor does he raise any issue about his interest in the forfeited property, since the subject of this forfeiture is currency. Rather, he argues, first, that he and the Harts are jointly and severally liable for the $70,000 forfeiture and the government has improperly collected from both; and second, that forfeiting the entire $70,000 from him results in an unconstitutional excessive fine under Austin v. United States, 509 U.S. 602, 621-22 (1993), and its progeny. These are issues going to the manner in which the government *collects* its forfeiture judgment. They are not ripe for final disposition -- by this court or by the district court -- until the

government has collected its forfeiture judgments against Covey *and the Harts*. In my view, the forfeiture issues Covey raises are not appealable for this reason, without regard to whether the district court's forfeiture order is now final.

This distinction may be important in the further proceedings the parties contemplate. Both parties agree that Covey and the Harts as conspirators are jointly and severally liable for forfeitures under 21 U.S.C. § 853(a)(1) -- an issue this court has not yet addressed.[5] Covey argues that the government has collected more than it deserves -- $70,000 from Covey and additional forfeitures from the Harts. The government responds that property seized from the Harts "represented proceeds of their drug activities" and therefore is not "applicable" to Covey's forfeiture. This dispute raises an unresolved issue of law: when drug proceeds are exchanged by a money launderer for "clean" cash, and the drug dealers use that cash to invest in a legitimate business, may the government recover twice the amount of the drug proceeds by forfeiting both the money launderer's cash and the drug dealer's property? I think not. But the issue should not be resolved until the government has completed its forfeiture collections. Similarly, Covey's excessive fine argument should not be addressed until the district court has held an evidentiary hearing to determine what portion of the $70,000 in drug proceeds the government has collected from Covey, as opposed to the drug dealers, Gary and Darrell Hart.

The government has conceded on appeal that Covey is entitled to a hearing on these issues after it completes its forfeiture collections, and that Covey will be entitled

---

[5]See United States v. Pitt, 193 F.3d 751, 765 (3d Cir. 1999); United States v. McHan, 101 F.3d 1027, 1043 (4th Cir. 1996), cert. denied, 520 U.S. 1281 (1997); United States v. Benevento, 836 F.2d 129, 130 (2d Cir. 1988); cf. United States v. Simmons, 154 F.3d 765, 769 (8th Cir. 1998) (conspirators are jointly and severally liable for the proceeds of a RICO offense).

to a refund if he has overpaid his forfeiture liability. Therefore, I concur in the court's decision that the forfeiture issues Covey seeks to raise on appeal are premature.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.