# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2227

_____

United States of America,          *
                                   *
            Appellee,              *
                                   *   Appeal from the United States
      v.                           *   District Court for the
                                   *   District of Nebraska.
Scott E. Mink, also known as Scooter,  *
                                   *
            Appellant.             *

_____

Submitted: November 14, 2006
    Filed: February 7, 2007

_____

Before RILEY, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

       On the day that jury selection was scheduled to begin, Scott E. Mink entered a plea of guilty to conspiracy to distribute and possess with intent to distribute methamphetamine and carrying a firearm during and in relation to a drug trafficking offense. The district court sentenced Mink to 60 months' imprisonment on the drug conspiracy charge and a consecutive term of 5 years' imprisonment on the firearm charge. In addition, the district court imposed jury costs in the amount of $3,390.69 against Mink. Mink appeals only the taxation of jury costs, arguing that the costs were unauthorized by law. We agree and reverse.

## I. *Background*

Following the entry of the venire into the courtroom, but prior to voir dire, Mink appeared before the district court and, pursuant to a plea agreement, entered a guilty plea obviating a trial.

Paragraph 5 of Mink's plea agreement provided for a waiver of certain appellate rights, stating:

> The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction in this case, including a waiver of all motions, defenses, and objections which defendant could assert to the charges or to the Court's entry of Judgment against defendant, *including review pursuant to 18 U.S.C. § 3742 of any sentence imposed and any and all issues inhering therein*, except for the following:
>
>> a. The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the substantive basis of defendant's plea of guilty and resulting conviction fails to state a crime upon which defendant could be convicted.
>>
>> b. Any issue involving a matter of law brought to the Court's attention at the time of sentencing in which the Court agrees further review is needed.

(Emphasis added). At the plea hearing, the district court asked Mink whether he realized that "paragraph 5 of your plea agreement contains a stipulation between you and the government that you will not appeal from your conviction and sentence," to which Mink answered "yes." Mink also acknowledged that any decision concerning his sentence was final and that he had no questions regarding the waiver of his right to appeal.

When Mink subsequently appeared before the district court for sentencing, Mink's counsel urged the district court not to impose jury costs, stating:

> [T]he only issue that really merits much discussion is the traditional policy the Court usually follows, not always, usually follows of assessing the jury costs when the case is settled at trial, the day of trial.
>
> And I don't mean to suggest that's not a reasonable, general proposition. I want to make an effort to persuade the Court in this instance to waive that for two reasons: The first of those is—and in no way am I trying to suggest that the government was in any manner dilatory. But on that specific morning, the government disclosed the proffer interview of Mr. Mink's girlfriend which was, in all proverbial ways, the straw that actually persuaded Mr. Mink of the reasonableness of not pursuing a trial.

Additionally, Mink's counsel requested that the district court consider Mink's indigent status.

The district court waived "payment of fine, costs of confinement and supervision due to the defendant's inability to pay," but it did impose a special fine for jury costs pursuant to Nebraska Criminal Rule 31.2 ("Local Rule 31.2")—which authorizes district courts from the District of Nebraska to impose such costs—explaining:

> I am taking into consideration the mitigating circumstances that have been described by Mr. Gooch. As both lawyers know, far too often we do see these situations where cases settle on the morning of trial or after trial has already begun. And it is a great inconvenience to the jurors who have sacrificed their time to come here. They have experienced costs to come here. They have missed work. They've had to pay for child care. And we need to encourage people in every way we can to get these matters resolved, if they can be resolved, before the day of trial.

I note that I did give the defendant credit for acceptance of responsibility, two levels of credit, despite the fact that the plea came late. And I find the assessment of the jury costs reasonable, although I recognize that it is something that the Court may not collect or may not collect in full.

The costs of $3,390.69 will be imposed against the defendant for the jury costs in this case.

## II. *Discussion*

On appeal, Mink argues that the taxation of jury costs is unauthorized by law. In response, the government moves to dismiss the appeal on the ground that Mink waived his right to appeal his sentence and any issues related to sentencing; and, in the alternative, it argues that the district court properly imposed jury costs pursuant to Local Rule 31.2.

### A. *Appeal Waiver*

"The 'general rule' is that 'a defendant is allowed to waive appellate rights,' including those involving the sentence imposed." *United States v. Aronja-Inda*, 422 F.3d 734, 737 (8th Cir. 2005) (quoting *United States v. Andis*, 333 F.3d 886, 889 (8th Cir. 2003) (en banc)). The government bears the burden of proving that the defendant's appeal is barred by the waiver. *Id*. To meet this burden, "the government must establish: (1) that the appeal is within the scope of the waiver, (2) that the defendant entered into the waiver knowingly and voluntarily, and (3) that dismissing the appeal based on the defendant's waiver would not result in a miscarriage of justice." *Id*. The government must show that "the scope of a defendant's waiver of appellate rights 'clearly and unambiguously' includes the issues asserted on appeal." *Id*. Accordingly, we strictly construe plea agreements and read any ambiguities in such agreements in favor of the defendant. *Id*.

-4-

As to the scope of the waiver, the appeal waiver in the present case states that the defendant "knowingly and expressly waives any and all rights to appeal the defendant's conviction in this case . . . including review pursuant to 18 U.S.C. § 3742 of any sentence imposed and any and all issues inhering therein." Unquestionably, the waiver applies to Mink's conviction, sentence, and issues inherent in the sentence. Thus, the issue is whether the imposition of jury costs is a part of the defendant's "sentence." Unfortunately, the term sentence is susceptible to more than one meaning and is used differently in a variety of contexts.

"A 'sentence' is commonly understood to be 'the order by which a court or judge imposes punishment or penalty upon a person found guilty.'" *United States v. Spallone*, 399 F.3d 415, 422 (2d Cir. 2005) (quoting *Webster's Third New International Dictionary* 2068 (1993)). A sentence is understood as being "the judgment of conviction." *Id*. (citing *Black's Law Dictionary* 1367 (8th ed. 1999) (defining "sentence" as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty"); *Oxford English Dictionary* 991 (2d ed. 1989) ("The judicial determination of the punishment to be inflicted on a convicted criminal").

"Sentence" is also commonly understood as referring to "the punishment or penalty" imposed by the court. *Id*. (citing *Webster's Third New International Dictionary* 2068; *Black's Law Dictionary* 1367 ("the punishment imposed on a criminal wrongdoer," for example, "a sentence of 20 years in prison"); *Oxford English Dictionary* 991 ("the punishment to which a criminal is sentenced")). "So used, 'sentence' sometimes refers to the totality of punishment imposed." *Id*. For example, in *United States v. Handakas*, 329 F.3d 115 (2d Cir. 2003), the Second Circuit noted that the defendant's "sentence included a term of imprisonment, a fine, an order of restitution, an order of forfeiture, and three years of supervised release." *Id*. at 116.

"On the other hand, with equal frequency, 'sentence' is used to refer to each punishment within the judgment of conviction, most particularly to the term of

incarceration." *Spallone*, 399 F.3d at 422 (citing *United States v. Johnson,* 378 F.3d 230, 236 (2d Cir.2004) (noting that on a sentencing remand wherein restitution was ordered, the court "imposed a sentence of 57 months' incarceration"); *United States v. Bove,* 155 F.3d 44, 45 (2d Cir.1998) (noting that application of the Sentencing Guidelines "produced a concurrent prison sentence of 12 months and 1 day on each count, a three-year term of supervised release, a $100 special assessment and a $15,000 fine")); *see also* 18 U.S.C. § 3553(c)(1) (using term "sentence" to refer only to prison sentence in requiring a statement of reasons "for imposing a sentence at a particular point within" a Guideline range that "exceeds 24 months").

Therefore, "the word 'sentence' can plausibly support different meanings." *Spallone*, 399 F.3d at 422 (holding that where, after defendant's sentence was reduced to "time served" and he was released from custody, the government moved for an order compelling defendant to comply with the supervision and restitution provisions of his original judgment of conviction, under the totality of the circumstances, the "sentence" reduced by the district court's order was only defendant's prison sentence, not the sentences of supervised release and restitution stated in his judgment of conviction). Because the word "sentence" can have different meanings, it is ambiguous; therefore, we must construe such ambiguity in Mink's favor. *Aronja-Inda*, 422 F.3d at 737. The definition most favorable to Mink is that "sentence" means a "term of incarceration." This definition of "sentence" does not include the imposition of jury costs. Thus, we hold that Mink's appeal is not within the scope of the waiver.

## B. *Jury Costs*

Because Mink's appeal of the imposition of jury costs is not within the scope of the waiver, we must address whether the imposition of such costs is in violation of the law. Mink conceded at oral argument that he did not object to the imposition of jury costs at sentencing as unlawful but merely requested that they not be imposed. Therefore, we review the trial court's imposition of such costs for plain error. Fed. R. Crim. P. 52(b). "[B]efore an appellate court can correct an error not raised at trial,

there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466–67 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). If all three conditions are satisfied, then we may exercise our discretion to recognize the error, "but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 467 (internal quotations and citations omitted) (alteration in original).

"A 'plain' error is one that is 'clear' or 'obvious.'" *United States v. Blazek*, 431 F.3d 1104, 1108 (8th Cir. 2005) (citing *Olano,* 507 U.S. at 734). "'[W]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration.'" *Id.* (quoting *Johnson*, 520 U.S. at 468).

As to the imposition of costs, § 1918 of 28 U.S.C. provides as follows:

(a) Costs shall be included in any judgment, order, or decree rendered against any person for the violation of an Act of Congress in which a civil fine or forfeiture of property is provided for.

(b) Whenever any conviction for any offense not capital is obtained in a district court, the court may order that the defendant pay the costs of prosecution.

In turn, § 1920 of 28 U.S.C. defines the term "costs," stating:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

We must read § 1918 in conjunction with § 1920, "which lists the expenses that may be taxed as costs." *United States v. Hiland*, 909 F.2d 1114, 1142 (8th Cir. 1990). Because § 1920 applies to both civil and criminal cases, "[a]bsent *explicit statutory or contractual authorization to the contrary*, federal district courts may tax as costs *only those expenses listed in § 1920*." *Id*. (emphasis added). In *Hiland*, we held that "the discretion granted by § 1918(b)[, payment of the costs of prosecution,] does not authorize federal district courts to order a criminal defendant to pay costs not enumerated in § 1920." *Id*. (concluding that because § 1920 does not include the costs of prosecution, the defendant could not be assessed such costs); *see also Gleckman v. United States*, 80 F.2d 394, 403 (8th Cir. 1935) (determining that the phrase "costs of prosecution"—which included taxation of jury fees, jury mileage, jury baliffs' fees, jury meals and lodging, and jury professional services—means costs that are taxable by "statute or established practice or rule of court *based on statute*") (emphasis added).

In the present case, Local Rule 31.2 provides, *inter alia*, that "[i]f a plea of guilty or a dismissal of the charges comes too late for the court to avoid summoning a jury or incurring costs under contract with an interpreter, the court on its own

initiative may impose juror or interpreter costs against one or more of the parties." When assessing whether a local rule is valid, courts "have confined their analyses to four inquiries: whether the rule conflicts with an Act of Congress; whether the rule conflicts with the rules of procedure promulgated by [the Supreme Court]; whether the rule is constitutionally infirm; and whether the subject matter governed by the rule is not within the power of a lower federal court to regulate." *Frazier v. Heebe*, 482 U.S. 641, 654 (1987).

Federal Rule of Criminal Procedure 57(b) authorizes a judge to "regulate practice in any manner consistent with federal law, these rules, and the local rules of the district." Local Rule 31.2, however, is not consistent with federal law. As we stated in *Hiland*, federal district courts are only allowed to impose as costs upon a criminal defendant those expenses expressly enumerated in § 1920. Therefore, the district court was without authority to impose jury costs against Mink, as imposition of such costs is not authorized under § 1920. Because our *Hiland* decision clarified that only those costs authorized by § 1920 may be imposed on a criminal defendant, we hold that the district court plainly erred in imposing jury costs of $3,390.69 against Mink.

### III. *Conclusion*

Accordingly, we reverse the taxation of jury costs against Mink and remand to the district court with instructions to enter an order in accordance with this opinion.

BEAM, Circuit Judge, dissenting.

Although <u>Hiland</u> may have been wrongly decided, it is precedent that must be considered. However, I do not get that far in the analysis, as Mink waived his rights to this appeal in his plea agreement. In that agreement, the language is plain–Mink waived "any and all rights to appeal [his] conviction in this case, including a waiver of all motions, defenses, and objections which [he] could assert to the charges or to

the Court's entry of Judgment against [him], including review . . . of any sentence imposed." The court misses the mark, focusing on whether the imposition of jury costs is a part of Mink's "sentence." The proper inquiry, based upon the plain language of Mink's plea agreement, is whether the imposition of jury costs is part of the court's "entry of Judgment," from which Mink waived all rights of appeal.

The "Judgment In A Criminal Case" entered by the district court on May 4, 2006, contains the offenses on which Mink was convicted, his term of imprisonment and subsequent terms of supervised release, along with the monetary penalties and court costs imposed, which includes the jury costs at issue on appeal. Jury costs, then, are contained in the "judgment," not the "sentence." This is reinforced by Rule 32(k)(1) wherein it is acknowledged that "[i]n the judgment of conviction, the court must set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence." Fed. R. Crim. P. 32(k)(1). Mink waived his right to appeal from the court's "entry of Judgment," only part of which contains the "sentence," however defined. See United States v. Covey, 232 F.3d 641, 646 (8th Cir. 2000) (recognizing that a final order of forfeiture and the sentence are *part* of the ultimate judgment).

What we are essentially dealing with here is a district court's ability to operate and govern its courtroom and the general expenses associated therewith. These amounts are not, by definition or otherwise, statutorily described and adversarily generated "costs" arising out of a discrete piece of litigation. They are, rather, institutional burdens that should be managed and controlled by the district court, including limitations on wasted time and money inevitable in situations where parties settle or reach a plea agreement in the eleventh hour after a jury has been impaneled and the wheels set in motion. Forcing defendants who manipulate the court's time to take responsibility for their behavior by way of imposition of jury-use fees is sound public policy and should be left undisturbed.

_____

-10-