UNITED STATES of America, Appellee,

v.

William H. IRVIN, Appellant.

No. 95–1680.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1995.

Decided Oct. 5, 1995.

Rehearing Denied Nov. 6, 1995.

John Edward Cash, Kansas City, Missouri, argued (Willard B. Bunch, Kansas City, Missouri, on the brief), for appellant.

Richard J. Marien, Kansas City, Missouri, argued (Stephen L. Hill, Jr., United States Attorney, on the brief), for appellee.

Before HANSEN, BRIGHT, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge.

William H. Irvin appeals his convictions [1] for using the proceeds of a mistakenly issued United States Treasury check and for failing to report the money on his income tax returns. He contends that the government failed to establish all the elements of conversion and that the evidence was insufficient to support the jury's verdict. We affirm.

At the time Irvin was discharged from the United States Army, the government owed him $183.69. Due to a clerical error he was mistakenly issued a United States Treasury check in the amount of $836,939.19. Irvin deposited the check in a personal savings account at Boatman's Bank. He used the proceeds of the check to pay off the mortgage on his father's home and to purchase Jeeps for himself and his wife. He also used the money for home renovations, charitable contributions, and gifts to relatives. Irvin spent over $340,000 of the proceeds of the check before the government discovered its error.

Irvin testified at trial that a short time before receiving the check he had gone to a lonely road and prayed that he would become self sufficient and be able to take care of others. He claimed that he thought the check was a miraculous answer to his prayers, not a government mistake. The banker who handled the deposit transaction for Irvin testified that when he asked about the check, Irvin told him it was a settlement from the

---

**1.** Irvin was convicted of conversion of government property in violation of 18 U.S.C. § 641, filing a false tax return in violation of 26 U.S.C. § 7206(1), and three counts of engaging in money transactions with criminally derived property in violation of 18 U.S.C. § 1957.

army but that he was not at liberty to discuss it. Irvin later transferred $500,000 from the savings account into an investment account managed by Boatman's Trust Company. The trust officer testified that Irvin told her the money was from a military settlement and that he seemed very private about it. Irvin did not report the money as income on his tax return, but he did report the interest it earned.

Irvin argues that his conviction for conversion of government property should be reversed because required elements of the offense were not established.[2] 18 U.S.C. § 641 provides in part:

> Whoever ... knowingly converts to his use or the use of another ... any ... money, or thing of value of the United States ... [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both.

Irvin asserts that he did nothing to induce the government to issue the check, that the proceeds were no longer the property of the United States when he put them to use, and that there was insufficient evidence that he acted knowingly.

■ Irvin claims in his brief that the Treasury check proceeds ceased to be government property and became his "no later than the time the check [was] delivered and deposited." This argument was specifically rejected by the en banc court in *United States v. McRee*, 7 F.3d 976, 982 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1649, 128 L.Ed.2d 368 (1994). *McRee* involved the conversion of an erroneously issued IRS refund. The en banc court held that the government retains a property interest in erroneously issued checks even where the payee lawfully obtains initial possession. Irvin suggests that we adopt the reasoning of the *McRee* dissent, but we find that of the majority more persuasive. When a Treasury check is mistakenly issued, the government's property interest in the funds does not pass to the unintended recipient. *See id.* at 981.

■ The argument that there is no conversion unless the funds are obtained by fraud was rejected in *United States v. Spear,* 734 F.2d 1, 2 (8th Cir.1984). In that case social security benefits were electronically transferred into the deceased beneficiary's joint account with the defendants, who spent the money for their own purposes. Irvin attempts to distinguish *Spear* because his check was made out to a living person, rather than a decedent, but this theory is not convincing. In both cases the checks were incorrectly issued and the defendants took advantage of the error to their profit. The fact that fraud did not induce the issuance of the checks did not affect the government's property interest.

Irvin also argues that his conviction for conversion of government property should be reversed because the evidence was insufficient to prove that he acted with the required intent. He claims that the evidence shows he believed the check to be an answer to his prayers, rather than a government error. He thus could not have acted knowingly with the intent to deprive the government of property.

■ Although Irvin testified that he believed the check to be a miracle, the circumstantial evidence presented at trial supports an inference that he acted knowingly. *See Spear,* 734 F.2d at 2 (circumstantial evidence is no less probative than direct evidence). In reviewing the sufficiency of the evidence to support a conviction, the evidence must be viewed in the light most favorable to the jury verdict and all reasonable inferences tending to support the verdict must be accepted as established. *Id.* Here the jury heard testimony that Irvin told bank employees on more than one occasion that the check was a settlement from the army that he was not at liberty to discuss. He did not immediately deposit the check into an account or spend the funds once deposited. There was no evidence that he had told anyone at the time

---

**2.** It is not disputed that if Irvin's conviction for conversion of government property is reversed, his convictions for engaging in monetary transactions with criminally derived property must also be reversed. These monetary transactions

involved his use of the check proceeds to purchase two jeeps and to pay off his father's mortgage. The government relied solely on the conversion theory to establish that the funds used in the transactions were criminally derived.

that he had received a check in answer to his prayers.

 Finally, Irvin argues that his conviction for filing a false income tax return should be reversed because the evidence does not show that he acted willfully. He claims that he did not know that the proceeds of the check were reportable income because he did not receive a W–2 form. The evidence at trial showed that Irvin had been paying income taxes for nearly twenty four years. His accountant testified that he likely had asked Irvin if he had any other income to report. Irvin indicated in his testimony that he had not told his tax preparer about the money because "that was not part of his business...." Moreover, Irvin did report the interest that he earned on the money. The jury could have inferred from the evidence that Irvin knew of his requirement to disclose, but willfully chose not to do so.

For these reasons, the judgment is affirmed.