_____

No. 95-3868
_____

United States of America,       *
                                *
        Plaintiff - Appellee,   *   Appeal   from   the   United   States
                                * District Court for the
    v.                          * District of South Dakota.
                                *
Gabe Aaron Dreamer,             *
                                *
        Defendant - Appellant.  *


_____

            Submitted:  March 12, 1996

              Filed:  July 9, 1996
_____

Before FAGG, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.


    Gabe Aaron Dreamer appeals from his conviction for setting fire to
a house in violation of 18 U.S.C. §§ 81, 1153 (1994).  Dreamer argues that
the government violated Brady v. Maryland, 373 U.S. 83 (1963), in failing
to disclose testimony of Shelli Poor Bear and that the district court[1]
erred in questioning another witness, Lisa Flying Hawk.  Dreamer also
argues that the district court erred in giving an aiding and abetting
instruction and in refusing a proposed circumstantial evidence instruction.
We affirm Dreamer's conviction.

_____

    [1]The Honorable Richard H. Battey, United States District Judge
for the District of South Dakota.

On July 14, 1994, Dreamer and others were having a party at the weekend home of Al Dreamer, Sr., Dreamer's father, just outside of Oglala, South Dakota. When Al, Sr. arrived at the house and found a party he called the police. Dreamer argued with his father because Dreamer wanted to continue the party, while his father wanted everyone to leave his house. After this argument the police and Al, Sr. left while Dreamer and the others stayed at the house. Later that night a fire destroyed the house.

The United States government charged Dreamer with setting the fire at his father's house. After a trial, Dreamer was found guilty of setting the fire, and he appeals from that conviction.

**I.**

Dreamer argues that the government's failure to disclose that Shelli Poor Bear would testify that he set the fire denied him due process under Brady v. Maryland, 373 U.S. 83 (1963).

Shortly after the fire Poor Bear told a police investigator that while she was at Al, Sr.'s house briefly the night of the fire, she left before the fire started. The government gave a copy of Poor Bear's statement to Dreamer's attorney before trial.

Sometime before Dreamer's trial Poor Bear left the state of South Dakota. Just two days before Dreamer's trial, the government managed to find Poor Bear. Poor Bear told the government that the statement she gave to the police investigator was not true and that she saw Dreamer set the house on fire. The day before Dreamer's trial the government told Dreamer's attorney and the district court that Poor Bear would testify about the fire which destroyed the house.

During the first day of Dreamer's trial, the government disclosed to Dreamer's attorney that Poor Bear would not only

testify about the fire but she would also contradict her earlier statement that she was not present when the fire started and testify that she saw Dreamer start the fire.  Dreamer's attorney expressed to the district court his concern that the government's late disclosure of Poor Bear's new statement was a total surprise first disclosed midway through Dreamer's trial.[2]  The court ordered the government to make Poor Bear its last witness to give Dreamer's attorney time to recover from any surprise caused by the government's recent disclosure of her new testimony.  Dreamer's attorney asked the court for a continuance to prepare for Poor Bear's new testimony.  The court denied this request, leading Dreamer's attorney to move for a mistrial based on the government's late disclosure of Poor Bear's new testimony.  The court denied this motion as well and allowed Poor Bear to testify.

Under the Due Process Clause of the Fifth Amendment, the government has a duty to disclose evidence which is favorable to Dreamer and material to the issue of his guilt.  Brady v. Maryland, 373 U.S. 83, 87 (1963).  To prove a violation of this duty, Dreamer must show that: (1) the government suppressed evidence; (2) the evidence was favorable to him; and (3) the evidence was material to the issue of his guilt.  United States v. Thomas, 940 F.2d 391, 392 (8th Cir. 1991).

We reject Dreamer's argument that the government violated its

---

[2]This mid-trial disclosure was all the more surprising to Dreamer's attorney because less than twenty-four hours earlier, in the presence of Dreamer's attorney, the district court asked the government's attorney, "Are there any statements that the government has that have not been produced?"  The government's attorney answered, "Not to my knowledge, Your Honor.  I have produced everything that I have in the file."

There was also some confusion over identifying Poor Bear.  A week before Dreamer's trial another woman, Lisa Flying Hawk, saying she was Poor Bear, gave a statement to Dreamer's attorney and his investigator.

duty to disclose. Poor Bear's later statement that she saw Dreamer start the fire was not favorable to Dreamer, but was highly incriminating. The only statement made by Poor Bear which was at all favorable to Dreamer was her first statement that she was not present at Al, Sr.'s house when it caught fire. Dreamer admits that the government gave this statement to him. The government did not violate its duty to disclose, because it properly disclosed Poor Bear's earlier favorable statement, see Giglio v. United States, 405 U.S. 150, 154 (1972), and it had no duty to disclose Poor Bear's later incriminating statement, Thomas, 940 F.2d at 392.

## II.

Dreamer argues that the district court erred in giving the jury an aiding and abetting instruction because there was insufficient evidence to support the instruction. Dreamer asserts that we must assume that this error was prejudicial because there is no way to determine from the general verdict form whether the jury followed or ignored the improper aiding and abetting instruction.

When the district court submits to the jury two or more grounds for conviction, for one of which there was insufficient evidence, and it is impossible to tell on what grounds the jury decided the defendant's guilt, we cannot reverse the jury's general verdict of guilty. Griffin v. United States, 502 U.S. 46, 56-60 (1991) (citing and quoting Turner v. United States, 396 U.S. 398, 420 (1970)). As long as there is sufficient evidence to support at least one of the grounds for conviction, we must affirm the jury's general verdict. Id.

Even assuming Dreamer is correct that there was insufficient evidence to support the district court's aiding and abetting instruction, the district court also instructed the jury that they could find Dreamer guilty if they found that he set the fire at his

father's house.  There was sufficient evidence to support this instruction, as Poor Bear testified that she saw Dreamer enter his father's house with a can of gasoline and set the house on fire.  There was sufficient evidence to support one of the grounds for conviction submitted to the jury and to support the general verdict of guilty.  Griffin, 502 U.S. at 56-60.  We reject Dreamer's argument.

## III.

Dreamer argues that the district court erred by rejecting his proposed jury instruction on how to consider circumstantial evidence. Without his proposed instruction, Dreamer contends that the jury's verdict may be based on speculation or conjecture.

The district court has wide discretion in formulating appropriate jury instructions.  United States v. McQuarry, 726 F.2d 401, 402 (8th Cir. 1984) (per curiam).  We review the adequacy of the jury instructions by considering them as a whole.  Id.

The district court did not abuse its discretion in rejecting Dreamer's proposed instruction on circumstantial evidence.  Other instructions given by the district court removed any threat of speculation or conjecture by the jury.  The district court instructed the jury that the government had the burden of proving Dreamer was guilty beyond a reasonable doubt.  The district court defined the government's burden of proof beyond a reasonable doubt as "proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it."  After giving these instructions, the district court was not obligated to give Dreamer's proposed instruction.

## IV.

Dreamer argues that the district judge improperly questioned

-5-

a witness, Lisa Flying Hawk, in front of the jury.

At trial Flying Hawk first testified that she could not remember if she saw Dreamer standing outside Al, Sr.'s house shortly after it caught fire. Flying Hawk then admitted that she testified at a previous grand jury hearing that she saw Dreamer standing outside the house shortly after it caught fire. Later, Flying Hawk testified that she did not see anyone standing outside the house shortly after it caught fire. Flying Hawk also stated that she "kind of made up a story" when she testified under oath before the grand jury.

Shortly after Flying Hawk's comment that she "kind of made up a story," Dreamer's attorney asked the district judge to advise Flying Hawk that she might be committing the crime of perjury. The district judge advised Flying Hawk about the crime of perjury and the penalties for committing perjury. After the judge advised Flying Hawk, the following exchange took place between the judge and Flying Hawk:

> FLYING HAWK: My first statement was true.
>
> THE COURT: Which first statement.
>
> FLYING HAWK: The one I gave to Lyle Brings Him Back.
>
> THE COURT: The one you gave to Lyle Brings Him Back.
>
> FLYING HAWK: That was the very first statement.
>
> THE COURT: So the statement you gave before the grand jury was false.
>
> FLYING HAWK: They were true.
>
> THE COURT: Very well. Anything further?

Dreamer now objects to this exchange, arguing that the district judge became an advocate for the government.

A district judge may ask questions to clarify the testimony of a witness in order to avoid any misunderstanding of the testimony by the jury. <u>See</u> <u>United States v. Cooper</u>, 596 F.2d 327, 330 (8th Cir. 1979). The district judge's questions, however, may not become so one-sided against the defendant as to deprive him of a fair trial. <u>United States v. Van Dyke</u>, 14 F.3d 415, 417-18 (8th Cir. 1994).

The district judge's questions were an attempt to clarify the confusing and contradictory testimony of Flying Hawk. The judge simply attempted to determine which of Flying Hawk's contradictory statements was the truth. When Flying Hawk refused to say which one was the truth, the judge stopped questioning her. The judge's questions were not one-sided and did not deprive Dreamer of a fair trial. We reject the argument that there was error in this exchange.

We affirm the conviction and judgment.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.