# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1076

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District of |
| | * | South Dakota. |
| Allen Flying By, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: September 25, 2007
Filed: December 26, 2007

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

A jury convicted Allen Flying By of embezzlement and theft from an Indian tribal organization in violation of 18 U.S.C. § 1163. The district court[1] sentenced him to thirty three months and ordered restitution in the amount of $8,200. Flying By appeals, contending that there was insufficient evidence for a reasonable jury to convict him, that the trial judge's questioning of witnesses in front of the jury violated

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

his right to a fair trial, and that the amount of loss attributed to him at sentencing was too high. We affirm.

Flying By is a member of the Standing Rock Sioux Tribe which is governed by a tribal council. Each of eight districts elects a representative to the tribal council, and Flying By served as the tribal council representative for the Running Antelope district. The districts also each have a district council, and Flying By's cousin, Susie Long Elk, was the treasurer of the Running Antelope district.

A fifteen count indictment was filed against Flying By and seven other Running Antelope officials in February 2006. The indictment charged Flying By with seven counts of embezzlement and theft, in violation of 18 U.S.C. § 1163, for misappropriating funds which belonged to the Standing Rock Tribe and which had been allocated to the Running Antelope district. All of the other defendants entered into plea agreements and were called by the government as witnesses at Flying By's trial.

The defendants were accused of making unauthorized expenditures and pocketing district funds for private gain by means of cash withdrawals and deceptive check notations, including for "consultant fees," "travel and research," "workshop," and "meetings and mileage." The government contended that the scheme was directed by Flying By, and that he instructed Long Elk to make cash withdrawals, issue checks, and distribute the funds to the defendants. When the misappropriation of funds came to light, tribal proceedings were initiated against several officials and Flying By was removed as his district's representative to the tribal council.

Flying By was convicted of three felony counts of embezzlement and theft and one lesser included misdemeanor count.[2] He was acquitted of two felony counts, and the district court dismissed another during trial and sentenced Flying By to thirty three months. On his appeal, he argues that the verdict was based on insufficient evidence, that he did not receive a fair trial because of the court's questioning of witnesses, and that the court erred in its finding of the amount of loss attributable to him.

The jury found Flying By guilty of "embezzl[ing], steal[ing], knowingly convert[ing] to his use or the use of another, willfully misappl[ying], or willfully permit[ting] to be misapplied, any of the moneys, funds, credits, goods, assets or other property belonging to any Indian tribal organization." 18 U.S.C. § 1163. We review de novo whether the evidence was sufficient to justify his convictions and draw all reasonable inferences in the light most favorable to the verdict. United States v. Spears, 454 F.3d 830, 832 (8th Cir. 2006). We may reverse the verdict only if no reasonable jury could have found the accused guilty. United States v. Jara, 474 F.3d 1018, 1021 (8th Cir. 2007).

Flying By does not dispute that the funds in question belonged to the tribe, but he asserts that there was insufficient evidence to sustain his convictions, arguing that he had no personal control or supervisory authority over tribal funds and was therefore not responsible for the unauthorized payments. The government disagrees with this characterization and responds that extensive evidence at trial showed that Flying By had a central role in embezzling the district funds and that he exercised strong influence over the district treasurer, his cousin Long Elk.

---

[2]The felony convictions involved tribal funds Flying By obtained for a bogus Rapid City retreat ($2,000 plus lodging); a private trip to an Albuquerque pow wow ($2,000 plus lodging); and a $3,200 wire transfer; his lesser included misdemeanor offense involved a "travel and research" trip for laundry machines ($1,000 or less).

Long Elk testified that "[w]henever [Flying By] needed money to go someplace, he'd come over and he'd ask me." There was also testimony from other defendants explaining how Flying By and others obtained district funds from Long Elk for their own personal use and how Flying By orchestrated the fraudulent scheme. After reviewing the record and trial transcript, we conclude that the jury's verdict that Flying By embezzled and stole tribal funds was based on sufficient evidence.

Flying By also argues that he was prejudiced by the district court's comments and active involvement in questioning. The government asserts in response that the district court merely exercised its duty to ensure that witnesses communicate with the jury in a clear and intelligible manner. See United States v. Dreamer, 88 F.3d 655, 659 (8th Cir. 1996) (trial judge's attempt to clarify confusing and contradictory witness testimony did not deprive defendant of fair trial).

Flying By points particularly to the district court's questioning of treasurer Long Elk and of Virgil Standing Crow, the former vice chairman of the Running Antelope district council. In an answer to defense counsel Long Elk stated that "consultant payments" to Flying By and other officials were legitimate expenditures. At her plea hearing she had testified that the funds had been embezzled, and the district court asked whether she was sure about the statement she had just made and whether she would like to speak with her attorney. On redirect examination Long Elk testified that the consultant payments had not been approved or authorized, explaining that she had been confused by the earlier question about legitimate expenditures. Later Standing Crow was asked questions relating to a number of counts in the indictment. After he denied that he had embezzled tribal money, the district court asked Standing Crow whether he would like to withdraw his guilty plea and go to trial. Standing Crow said "no," and the court asked him "what the truth is, sir." Standing Crow responded that he had embezzled the funds. The district court noted that he had "testified both ways" and advised him that he should not plead guilty to something he had not done and

asked whether he would like more time to speak with his attorney. Standing Crow declined.

A trial judge is more than a mere moderator of the trial and has the prerogative to elicit facts necessary to a clear presentation of the issues. United States v. Scott, 26 F.3d 1458, 1464 (8th Cir. 1994). Although a federal trial judge may ask questions to clarify testimony, the court should not lose its color of neutrality or accentuate the prosecution's case. United States v. Van Dyke, 14 F.3d 415, 420 (8th Cir. 1994). In order to avoid affecting the jury by appearing to favor one side or the other, a trial court should limit its questions to clarification of specific testimony. United States v. Bland, 697 F.2d 262, 265-66 (8th Cir. 1983). A balancing test is used to evaluate whether in the context of the overall record the court's questions destroyed the fairness of a trial. United States v. Bamberg, 478 F.3d 934, 940-41 (8th Cir. 2007).

In this case the trial court put questions to a number of witnesses. Its questions were generally designed to clarify the testimony or to draw out the full story of the witness. The testimony of Long Elk and Standing Crow, for example, covered multiple transactions and could have confused the jury without clarification of which incident was being addressed. The trial judge had taken the pleas of the codefendants and was familiar with their prior testimony. It appears from the trial transcript that some of the witnesses were confused by the questions put by counsel and somewhat reticent in their testimony. We conclude that the district court's efforts to clarify witness testimony were not inappropriate in these circumstances and did not deprive Flying By of a fair trial, although we note that questions to a witness about consulting an attorney are preferably asked outside the presence of the jury.

In contrast to his current arguments about the district court's questions, Flying By made only a single objection to them at trial. Timely objections are important so that any error or misunderstanding can be clarified at the trial. United States v. Williams, 994 F.2d 1287, 1294 (8th Cir. 1993) (issue is preserved for appeal through

timely objection and clearly stated grounds for the objection so that trial court can prevent or correct the error); see also United States v. Filker, 972 F.2d 240, 242 (8th Cir. 1992) ("This court will not reverse a district court on an issue that is raised for the first time unless a gross miscarriage of justice would otherwise result."). Counsel may object to questions from the court either instantaneously or at the next available opportunity when the jury is not present. Fed. R. Evid. 614©). Flying By's sole objection during the trial came after Standing Crow had answered affirmatively to the court's question about whether his testimony at his plea hearing, that he had embezzled $17,000 in checks and cash, was the truth. Defense counsel objected on the grounds of improper impeachment.

We review the district court's overruling of Flying By's objection for abuse of discretion. See Spencer v. Young, 495 F.3d 945, 949 (8th Cir. 2007) (evidentiary rulings are generally reviewed for abuse of discretion if objected to at trial). Since the court's question came after testimony by Standing Crow which was inconsistent with what he said at his plea hearing, it was not improper. See United States v. Jarrett, 956 F.2d 864, 866 (8th Cir. 1992) (court's comment about inconsistencies between witness's trial testimony and prior statements did not cross over the line of impartiality because it was made for clarification). The district court did not abuse its discretion in overruling the objection.

If a party failed to object at trial, his complaints are reviewed under a plain error standard. See United States v. Mink, 476 F.3d 558, 563 (8th Cir. 2007); Fed. R. Crim. P. 52(b). Under plain error review we will correct an error if it "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993), quoting United States v. Young, 470 U.S. 1, 15 (1985); see also United States v. Parker, 267 F.3d 839, 844 (8th Cir. 2001) ("We will reverse under plain error review only if the error prejudices the party's substantial rights and would result in a miscarriage of justice if left uncorrected.").

We have carefully reviewed the record and conclude that the court's questions helped clarify witness testimony for the jury and that neither its questions nor the reference to counsel seriously affected the fairness or integrity of the trial.  One indication that Flying By suffered no prejudice from the court's questioning was that he was acquitted on the count about which Long Elk was testifying when she was asked whether she wanted to speak with her attorney.  See United States v. Reeves, 83 F.3d 203, 208 (8th Cir. 1996) (no prejudice since defendant was acquitted on count involving witness's testimony).  And although a trial judge should generally not suggest in front of the jury that a witness should confer with an attorney, we find no plain error here when there were contradictions in the testimony.  Moreover, the court instructed the jury in its closing instructions that "nothing I have said or done during the trial, including questions asked by the court," was intended to indicate an opinion on what its verdict should be.  See, e.g., United States v. Jerde, 841 F.2d 818, 824 (8th Cir. 1988).  Flying By's counsel expressed satisfaction with this instruction and assured the court "that's all I wanted."  There is no showing that the jury failed to honor this instruction.  See Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").  We conclude that the district court's questioning of the witnesses did not prejudice Flying By's substantial rights.

Flying By next argues that the district court erred in its loss calculation and imposed an excessive sentence.  A district court's application of the sentencing guidelines is reviewed de novo.  United States v. Mashek, 406 F.3d 1012, 1016 (8th Cir. 2006).  Findings of fact are reviewed for clear error.  United States v. Brave Thunder, 445 F.3d 1062, 1065 (8th Cir. 2006).  The court's sentence is reviewed for reasonableness, a standard akin to abuse of discretion.  United States v. Goody, 442 F.3d 1132, 1134 (8th Cir. 2006).

The relevant conduct for which a defendant may be held responsible consists not merely of his own actions, but includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."

U.S.S.G. § 1B1.3(a)(1)(B). The district court attributed to Flying By a loss exceeding $70,000, which included the $8,200 received by Flying By as well as the misappropriated funds distributed by Long Elk to the other defendants. In fashioning its sentence, the court noted that Flying By was the highest ranking tribal officer among the defendants and that he had abused the trust placed in him by the tribe. Rather than reporting the illegal activities, Flying By had planned and directed the fraudulent scheme by repeatedly telling his cousin Long Elk to withdraw tribal funds. The court found Flying By fully aware of the illegality of his actions and "not a person of low intelligence by any means;" he had graduated from college and worked as a teacher prior to serving as a salaried tribal representative.

The district court did not err in finding Flying By responsible for the loss resulting from all reasonably foreseeable acts in furtherance of the scheme. See U.S.S.G. § 1B1.3(a)(1)(B); see also United States v. Radtke, 415 F.3d 826, 844 (8th Cir. 2005) (defendant may be held liable for loss caused by fellow participant in common scheme). Neither did it err by including amounts pertaining to counts of which he was acquitted. See United States v. Booker, 543 U.S. 220 (2005); see also United States v. High Elk, 442 F.3d 622, 626 (8th Cir. 2006).

Flying By also complains that his sentence of thirty three months is excessive compared to those of his codefendants. The court increased Flying By's base offense level by eight levels for the amount of loss, pursuant to U.S.S.G. § 2B.1.1(b), two levels for abuse of a position of trust, pursuant to U.S.S.G. § 3B.1.3, and four levels for being an organizer and leader of the criminal activity, pursuant to U.S.S.G. § 3B.1.1. See U.S.S.G. § 3B1.3 (abuse of trust adjustment permissible in addition to a role enhancement unless already included in base offense level). With Flying By's criminal history category I, the resulting guideline range was 33-41 months, and he was sentenced at the low point of that range. See, e.g., United States v. Meyer, 452 F.3d 998, 1000 (8th Cir. 2006) (sentence within the advisory guideline range is presumptively reasonable).

The government points out that in complaining about his sentence, Flying By ignores the differences in roles and conduct among the defendants, including his leadership in the scheme and his codefendants' willingness to enter into plea agreements and testify. See United States v. Gallegos, 480 F.3d 856, 859 (8th Cir. 2007) (affirming sentence disparity because one of the defendants provided substantial assistance to the government). Sentence disparities between dissimilarly situated defendants are not unwarranted, United States v. Vasquez, 433 F.3d 666, 671 (8th Cir. 2006), and Flying By has not shown that the district court used an impermissible factor creating unwarranted sentence disparity between the codefendants. See 18 U.S.C. § 3553. We conclude that Flying By has not shown that his sentence was unreasonable.

For these reasons, we affirm the judgment of the district court.

_____