# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

––––––––––––––––––

No. 08-1286

––––––––––––––––––

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Eileen Janis, | * | |
| | * | |
| Appellant. | * | |

––––––––––––––––––

Submitted: November 12, 2008
Filed: February 26, 2009

––––––––––––––––––

Before MURPHY, RILEY and GRUENDER, Circuit Judges.

––––––––––––––––––

GRUENDER, Circuit Judge.

Following an investigation by the United States Department of the Interior into alleged criminal activity concerning the Oglala Sioux Tribe's employee pay-advance program, Eileen Janis was charged with and convicted of theft or embezzlement from an Indian tribal organization in violation of 18 U.S.C. § 1163. Janis appeals her conviction, arguing that the district court[1] erred in denying her motion for a judgment

––––––––––––––––––

[1]The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota.

of acquittal or a new trial because the Government's evidence was insufficient to sustain her conviction. For the reasons discussed below, we affirm.

## I. BACKGROUND

From January 2004 to December 2004, Eileen Janis worked in the administrative offices of the Oglala Sioux Tribe (the "Tribe") as the Tribe's finance committee coordinator. The finance committee coordinator was politically appointed and served at the pleasure of the Tribe's elected leaders. While Janis served as the finance committee coordinator, Kim Colhoff worked as the Tribe's payroll supervisor and David Rabbit was the Tribe's treasurer.

The Tribe managed its internal finances according to policies set forth in the "Oglala Sioux Tribe's Finance Management Manual" (the "Finance Manual"). Under the Finance Manual, the Tribe paid its employees biweekly. To accommodate employee emergencies, the Finance Manual included a "pay-advance" program:

> 06.702 SALARY ADVANCES
>
> Employees requesting a salary advance must have 40 hours accrued payroll from their respective program. Employees may request from the Treasurer a salary advance on an emergency basis up to the net amount of the employee's regular biweekly paycheck. All such salary advances must be submitted through the Treasurer. All such salary advances are handled on an individual basis. The Treasurer's determination is final. Salary advances shall be deducted from the next pay period[.]
>
> GENERAL POLICIES REGARDING SALARY ADVANCES INCLUDE THE FOLLOWING:
>
> 1.  Employees are allowed only two salary advances per year. Employee fills out a salary advance form signed by their supervisor.

2.    Program Director submits approved form to the Treasurer for final approval/disapproval.
3.    If approved, Treasurer submits to Payroll Supervisor for processing.
4.    Payroll will verify amount of salary advance.

Because of their positions, Janis, Rabbit and Colhoff were familiar with the contents of the Finance Manual, including the details of the pay-advance program and its restrictions.  Throughout 2004, however, Janis, Rabbit and Colhoff requested, approved and issued pay-advances to themselves and others in violation of the two-pay-advances-per-year limitation and the requirement that pay-advances be deducted from the following pay period.  In total, Janis requested and received ninety-nine pay-advances during the twenty-five pay periods in 2004 totaling more than $71,720, an amount well in excess of the $37,512 that she earned for the same time frame.

In August 2004, Tribe comptroller Dean Patton learned of allegations that some Tribe employees were abusing the pay-advance system by taking more than the allowed two pay-advances per year and taking more money in pay-advances than the Tribe could deduct from their paychecks in the next pay period.  Patton investigated the allegations and found that Janis, Rabbit, Colhoff and three elected Tribe leaders had each violated these pay-advance policies several times.  Patton confronted Rabbit and Colhoff about their violations, but he decided not to raise the issue with others because he feared that the Tribe leaders would retaliate against him.  After speaking with Patton, Colhoff confronted Janis concerning Janis's violations of the pay-advance policies.  Specifically, Colhoff informed Janis that by that point in 2004, Janis had received $17,000 more in pay-advances than had been withheld from her biweekly paychecks.  Colhoff also told Janis that she faced dim prospects for continued employment because she was a political appointee aligned with the Tribe leaders who were expected to lose the upcoming election.  Janis told Colhoff to "mind her own business."

On November 2, 2004, the Tribe elected new leaders. Following the election, Janis increased the frequency with which she requested and received pay-advances, taking fifteen pay-advances in the next six weeks. Meanwhile, Patton informed the new Tribe president, Cecilia Fire Thunder, of the extent to which some Tribe employees, including Janis, were violating pay-advance policies. On December 15, 2004, Fire Thunder terminated Janis's employment with the Tribe. At the time of her termination, Janis still owed the Tribe $22,140 for pay-advances that she had not repaid.

Fire Thunder referred Janis, Rabbit and Colhoff's conduct to law enforcement for investigation. On February 5, 2007, Special Agent Anthony Hoben of the United States Department of the Interior interviewed Janis about her use of the Tribe's pay-advance program. Janis stated that she was aware of the policies prohibiting employees from taking more than two pay-advances per year or taking pay-advances that could not be deducted from the next paycheck. Janis also stated that she took more advances than most employees and that she believed her conduct was justified because other Tribe leaders also violated the pay-advance program's policies.

On April 19, 2007, a federal grand jury returned a one-count indictment charging Janis, Rabbit and Colhoff with theft or embezzlement from an Indian tribal organization in violation of 18 U.S.C. § 1163. Rabbit and Colhoff pled guilty, but Janis entered a plea of not guilty and proceeded to trial. At trial, the court instructed the jury on the elements of a § 1163 violation and defined the relevant statutory terms "embezzle," "steal," "convert," "knowingly," and "misapply." The jury returned a general verdict of guilty. Janis moved for a judgment of acquittal or a new trial, but the district court denied her motion.

## II.   DISCUSSION

Janis appeals the district court's denial of her motion for a judgment of acquittal or a new trial. We review a denial of a motion for a judgment of acquittal de novo, and we reverse "only if no reasonable jury could have found the accused guilty." *United States v. Flying By*, 511 F.3d 773, 776 (8th Cir. 2007). In reviewing this issue, "we view the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by that evidence." *United States v. Milk*, 447 F.3d 593, 598 (8th Cir. 2006). We review a denial of a motion for a new trial for an abuse of discretion, recognizing that a new trial motion should only be granted where "the interest of justice so requires." *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004) (quoting Fed. R. Crim. P. 33). "The jury's verdict must be allowed to stand unless the evidence weighs heavily enough against the verdict such that a miscarriage of justice may have occurred." *United States v. Garcia-Hernandez*, 530 F.3d 657, 663-64 (8th Cir. 2008) (quoting *United States v. Sturdivant*, 513 F.3d 795, 802 (8th Cir. 2008)).

Janis argues that the district court erred in denying her motion for a judgment of acquittal because the Government's evidence is insufficient to prove that she committed a wrongful act under § 1163; namely embezzling, stealing, knowingly converting or willfully misapplying tribal property. *See* 18 U.S.C. § 1163 (stating that an individual who "embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization . . . [s]hall be fined . . . or imprisoned not more than five years, or both" if the value of the property is greater than $1,000). Janis contends that Rabbit, as treasurer, had the full authority to approve her requests and that she gained legal title to pay-advance funds that Rabbit approved, thereby making it impossible for her to commit a wrongful act. Janis also argues that the Government conceded that she did not commit a wrongful act based on the Government's statements in its closing

argument that "we don't think she did steal [the money]" and that Janis's pay-advance requests were "lawful."

Because the district court submitted to the jury multiple grounds for conviction under § 1163 and because the jury returned a general verdict of guilty, we must affirm Janis's conviction provided that "there is sufficient evidence to support at least one of the grounds of conviction." *See United States v. Dreamer*, 88 F.3d 655, 658 (8th Cir. 1996); *see also United States v. Wilkinson*, 124 F.3d 971, 976 (8th Cir. 1997) ("[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." (quoting *Turner v. United States*, 396 U.S. 398, 420 (1970))). Here, we choose to analyze Janis's sufficiency arguments with respect to the conversion charge, recognizing that a "conversion" under § 1163 is a "knowing and unauthorized exercise of dominion over another's property." *United States v. Big Crow*, 327 F.3d 685, 689 (8th Cir. 2003) (quoting *Wilkinson*, 124 F.3d at 977). If the evidence is sufficient to sustain Janis's conviction for conversion, then we need not determine whether there was sufficient evidence to prove that Janis embezzled, stole, or willfully misapplied tribal property. *See Wilkinson*, 124 F.3d at 976; *Dreamer*, 88 F.3d at 658.

Janis's arguments concerning her motion for a judgment of acquittal fail to persuade us for at least three reasons. First, the record shows that the Government's evidence was sufficient to support Janis's conviction on a conversion theory. *See Dreamer*, 88 F.3d at 658. In particular, the Government presented sufficient evidence that Janis's receipt and retention of pay-advance funds in violation of the Tribe's pay-advance policies constituted a knowing and unauthorized exercise of dominion over the Tribe's property, which satisfied the definition of a conversion under § 1163. *See Big Crow*, 327 F.3d at 689. Agent Hoben's testimony concerning his interview with Janis demonstrated that she knew of the Tribe's pay-advance restrictions—that employees were only permitted to take two pay-advances per year and that employees

-6-

were only authorized to take pay-advances that could be deducted from the employee's next pay period—when she requested and received her pay-advances in 2004. Despite her knowledge of the Tribe's pay-advance restrictions, the Government proved that Janis requested, received and retained ninety-nine pay-advances in 2004 worth $71,720, which was nearly double her annual salary. Even after the Tribe's elections, when Janis knew that her political appointment would likely be terminated, Janis took fifteen pay-advances in a six-week period, further violating the pay-advance restrictions. Viewing this evidence in the light most favorable to the jury's verdict, we find that a reasonable jury could have found Janis guilty of converting the Tribe's funds in violation of § 1163.

Second, we disagree with Janis's contention that legal title to the pay-advance funds necessarily passed to Janis by virtue of Rabbit's approval of each pay-advance request based on his authority as treasurer. Janis's argument relies on the Finance Manual provision stating that "[t]he Treasurer's determination is final." This statement, however, is followed by provisions requiring that "[s]alary advances shall be deducted from the next pay period" and that "[e]mployees are allowed only two salary advances per year." Janis's theory—that Rabbit could waive the program's restrictions because the treasurer's "determination is final"—is arguably plausible. But the Government's theory—that the treasurer's final determination was to be informed by and subject to the program's restrictions—is more reasonable. This is also supported by Rabbit's testimony that he knew that receiving pay-advance checks in violation of the restrictions was "wrong." Because we view the evidence in the light most favorable to the guilty verdict and grant all reasonable inferences that are supported by that evidence, we conclude that a reasonable jury could find that Rabbit's approval of Janis's pay-advance requests was subject to the pay-advance program's restrictions. *See United States v. Mack*, 343 F.3d 929, 934 (8th Cir. 2003) (holding that "[w]e cannot reject a jury's conclusions" where the evidence supports "two contradictory, albeit reasonable, inferences"). Thus, legal title to the pay-advance funds did not pass to Janis. *See United States v. Irvin*, 67 F.3d 670, 672 (8th

Cir. 1995) ("[The] property interest in the [converted] funds does not pass to the unintended recipient.").

Third, we do not agree with Janis's contention that the Government's statements in its closing argument constituted an admission that Janis did not convert the Tribe's funds. When the statements are read in the context of the Government's entire closing argument, it is clear that the Government was merely elaborating on the differences between the definitions of stealing, embezzlement and conversion under § 1163 and articulating its position that Janis embezzled or converted the funds rather than stole them.

Because a reasonable jury could have found Janis guilty of conversion under § 1163, we conclude that the district court did not err in denying Janis's motion for a judgment of acquittal. *See Flying By*, 511 F.3d 773, 776 (8th Cir. 2007). We also find that the district court did not abuse its discretion in denying Janis's motion for a new trial. We do not find that the evidence weighs heavily against the guilty verdict such that a miscarriage of justice may have occurred. *See Garcia-Hernandez*, 530 F.3d at 663-64.[2]

---

[2]In her opening brief, Janis claimed that a new trial was necessary because her rights were prejudiced by the Government's closing argument, where it argued that Janis did not intend to repay the advanced funds. However, Janis's counsel abandoned this claim during oral argument, and we typically do not address abandoned claims. *See Wigg v. Sioux Falls Sch. Dist. 49-5*, 382 F.3d 807, 812 n.2 (8th Cir. 2004). We note, however, that even if this issue had not been abandoned, it would not affect our analysis. Janis's intent to deprive the Tribe of its property was properly at issue during the trial based upon the mens rea requirement attendant to embezzling, stealing, knowingly converting, or willfully misapplying tribal property under § 1163, and thus it was a proper subject for the Government's closing argument. *See United States v. Schnurstein*, 977 F.2d 449, 454 (8th Cir. 1992) (holding that a district court's denial of a new trial motion was not an abuse of discretion where the Government's comments at closing argument concerned "one of the elements of the offenses charged").

## III.  CONCLUSION

For the foregoing reasons, we affirm Janis's conviction.

_____