# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3714

_____

United States of America,

Plaintiff - Appellee,

v.

Emerson Tyrone Jackson, also
known as Turk,

Defendant - Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the Northern
District of Iowa.

[UNPUBLISHED]

_____

Submitted: June 12, 2009
Filed: August 13, 2009

_____

Before MELLOY, BEAM, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Emerson Jackson appeals from a jury verdict finding him guilty on one count of conspiracy to manufacture and distribute 50 grams or more of crack cocaine, three counts of distributing crack cocaine within 1000 feet of a public playground or school, and one count of aiding and abetting another in the distribution of crack cocaine within 1000 feet of a public playground or school. After the jury verdict, the district

court[1] denied Jackson's motion for a judgment of acquittal or a new trial and sentenced Jackson to life imprisonment.  We affirm.

## I.    BACKGROUND

Jackson was indicted for the above offenses in June of 2008.  At the time, he had committed two prior felony drug offenses.  At trial, the government presented evidence of four controlled drug purchases where informants bought crack cocaine from Jackson.  Several officers testified to the facts of these drug purchases stating, (1) Jackson sold the crack cocaine directly on three occasions, (2) on another occasion Jackson directed an associate to make the sale, and (3) each sale occurred within 1000 feet of a public playground or school.  Each controlled drug buy was recorded. Further, officers seized marked money from Jackson and one of his associates, Marquette Smith, after the final transaction.

The government also elicited the testimony of ten cooperating witnesses who attested to Jackson's participation in a conspiracy to distribute crack cocaine and his involvement in the sale of crack cocaine.  Christie Hejhal, Myree Coleman, and Garner McCoy, who all took part in the controlled buys, testified about their knowledge of and involvement with Jackson's distribution of crack cocaine. Coleman also testified that he acted as a middleman in drug transactions between Jackson and others between 2001 and 2004.  McCoy testified that he purchased drugs from Jackson for redistribution in 2002/2003 and 2006/2007.  Laurie Scofield and Antonio Jones testified that they bought crack cocaine from Jackson for redistribution on numerous occasions.  Scofield stated Jackson was her primary supplier for several months and that she would often pay Jackson for the drugs with the drug sale proceeds.  Further, Abdul Turner testified that he made numerous trips with Jackson

_____

[1]The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

-2-

to obtain cocaine to be used in the manufacture and distribution of crack cocaine. Turner also testified that he provided Jackson with drugs for redistribution numerous times in 2002. Mark Thomas and Tony Smith testified about their involvement in the conspiracy to distribute crack cocaine with Turner, Jackson, and others. Thomas corroborated Turner's accounts of the trips with Jackson to procure and deliver the cocaine, and both Thomas and Smith said they saw Jackson sell crack to others, saw Turner give Jackson crack for redistribution, and personally bought crack from Jackson. Finally, Gailene Jones testified that she bought drugs from Jackson numerous times, and both she and Brandon Goolsby testified that they saw Jackson engage in drug transactions with others.

Virtually all of the governments' witnesses were either already serving time in prison after receiving a reduced sentence in exchange for their testimony, or were awaiting sentencing and testifying with the hope of receiving a reduced sentence. In addition, during cross-examination, defense counsel elicited testimony that some of the witnesses only purchased small quantities of crack cocaine from Jackson, had poor memories about their encounters with Jackson because of drug use, or did not mention Jackson in earlier conversations with police, but later implicated Jackson.

A jury convicted Jackson on all counts. Jackson moved for a judgment of acquittal and a new trial alleging an insufficiency of the evidence. The district court denied Jackson's motion and sentenced him to life in prison on the conspiracy count, which was the mandatory minimum, and to concurrent terms of 360 months' each on the remaining counts. This appeal follows.

## II.    DISCUSSION

The denial of a motion for a judgment of acquittal is reviewed de novo "and we reverse only if no reasonable jury could have found the accused guilty. In reviewing this issue, we view the evidence in the light most favorable to the guilty verdict,

granting all reasonable inferences that are supported by that evidence." United States v. Janis, 556 F.3d 894, 897 (8th Cir. 2009) (internal quotation omitted). The denial of a motion for a new trial, however, is reviewed for an abuse of discretion, "recognizing that a new trial motion should only be granted where the interest of justice so requires. The jury's verdict must be allowed to stand unless the evidence weighs heavily enough against the verdict such that a miscarriage of justice may have occurred." Id. (internal quotation omitted).

Jackson argues that the district court erred in denying his motion for a judgment of acquittal or a new trial because the evidence against him "was limited to the highly questionable testimony of 'cooperating witnesses' all of whom were seeking to escape or minimize consequences of their own crimes by offering testimony against Jackson in exchange for favors from the United States Attorney's office." The unreliability of this testimonial evidence, Jackson argues, greatly outweighs the verdict against him. In addition, Jackson asserts this testimony was not corroborated by physical or testimonial evidence.

A district court must enter a judgment of acquittal when the evidence is insufficient to sustain a conviction for the offense. United States v. Starr, 533 F.3d 985, 997 (8th Cir.), cert. denied, 129 S. Ct. 746 (2008). When considering a motion for a judgment of acquittal, a district court "should not assess the credibility of the witnesses or weigh the evidence," but decide only whether a reasonable jury could have found the defendant guilty. Id. at 997-98. A conviction on a conspiracy charge requires that the government prove beyond a reasonable doubt (1) the existence of an agreement to achieve an illegal purpose, (2) that the defendant knew of the agreement, and (3) that the defendant knowingly became part of the agreement. United States v. Johnson, 470 F.3d 1234, 1237 (8th Cir. 2006). "Moreover, a conspiracy conviction may be based on indirect or circumstantial evidence, including solely testimony from co-conspirators." United States v. Whirlwind Soldier, 499 F.3d 862, 870 (8th Cir. 2007), cert. denied, 128 S. Ct. 1286 (2008). In addition, the "testimony of an

accomplice is sufficient to sustain a conspiracy conviction unless it is incredible or insubstantial on its face." United States v. Thompson, 533 F.3d 964, 970 (8th Cir. 2008).

The evidence in this case supports the conspiracy conviction against Jackson. Jackson does not allege that the challenged testimony was incredible or insubstantial on its face, but only that the testimony against him was unreliable because it was given in exchange for leniency. It should come as no surprise, however, that testifying co-conspirators in an illegal operation are themselves facing criminal charges and are no doubt testifying in exchange for leniency. This type of evidence is frequently used and is not per se unreliable. Rather, any reliability determination is best left to the sound judgment of the jury. And, in a case such as this, where ten independent witnesses testified as to the defendant's involvement in the alleged conspiracy, and evidence of four controlled drug buys established that the defendant sold crack cocaine three times and, at least once, directed another to sell crack cocaine,[2] there is no doubt that the jury's conclusion should not be disturbed.

Jackson also challenges the denial of his motion for a new trial, alleging a miscarriage of justice because "there was no credible evidence of Jackson's

---

[2]Evidence of the four controlled drug buys included the testimony of officers and witnesses, recordings of the transactions, as well as drugs and marked money found on Jackson and his associate during their arrest. This evidence belies any challenge to the sufficiency of the evidence to sustain Jackson's conviction on the distribution and aiding and abetting charges. See, e.g., United States v. Hawkins, 548 F.3d 1143, 1146, 1148-49 (8th Cir. 2008), cert. denied, 129 S. Ct. 2757 (2009) (upholding a conviction for distribution within 1000 feet of a school based mainly on testimony by one cooperating witness that she made a controlled buy from the defendant within blocks of a local high school); United States v. Mendoza, 421 F.3d 663, 668-69 (8th Cir. 2005) (upholding a similar aiding and abetting conviction where the evidence indicated, among other things, that the defendant had arranged for drugs to be delivered by a courier to a distributor for sale in a controlled buy).

membership in a conspiracy to distribute crack cocaine." Unlike a motion for a judgment of acquittal, a district court may weigh the evidence and assess witness credibility on a motion for a new trial. United States v. Samuels, 543 F.3d 1013, 1019 (8th Cir. 2008), cert. denied, 129 S. Ct. 1921 (2009). Nevertheless, "[m]otions for new trials based on the weight of the evidence are generally disfavored," id., and are granted only when the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred. Janis, 556 F.3d at 897.

The district court correctly denied Jackson's new trial motion. In its order denying Jackson's request, the district court outlined the substantial evidence of Jackson's guilt set forth above. In addition, the district court specifically addressed Jackson's concerns regarding the credibility of cooperating witnesses. Jackson's argument that there was no credible evidence against him "'is no more compelling on the issue of a new trial than it was on the issue of judgment of acquittal.'" United States v. Hawkins, 548 F.3d 1143, 1149 (8th Cir. 2008), cert. denied, 129 S. Ct. 2757 (2009) (quoting Samuels, 543 F.3d at 1019-20). Given the overwhelming evidence against Jackson, the fact that Jackson took full advantage of the opportunity to discredit this evidence, and because "the jury was free to believe all, part, or none of it," id., we cannot say a miscarriage of justice may have occurred. Thus, the district court did not abuse its discretion in denying Jackson's motion for a new trial.

## III.   CONCLUSION

For the foregoing reasons, we affirm.

_____