# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1981

_____

Emerson Tyrone Jackson

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: February 13, 2013
Filed: June 7, 2013
[Unpublished]

_____

Before SMITH, MELLOY, and BENTON, Circuit Judges.

_____

PER CURIAM.

Emerson Jackson was charged and convicted of

one count of conspiracy to manufacture and distribute 50
grams or more of crack cocaine [("Count 1)"],[1] three counts

_____

[1]*See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851.

of distributing crack cocaine within 1000 feet of a public playground or school ["(Counts 2, 3, and 5")],[2] and one count of aiding and abetting another in the distribution of crack cocaine within 1000 feet of a public playground or school [("Count 4")].[3]

*United States v. Jackson*, 341 F. App'x 262, 263 (8th Cir. 2009) (unpublished per curiam). Following his conviction, Jackson filed a motion seeking relief under 28 U.S.C. § 2255 for, among other things, ineffective assistance of counsel. Jackson based his claim, in part, on his trial counsel's alleged failure to properly inform him that Counts 2 through 5 carried mandatory minimum sentences of life imprisonment. The district court[4] denied § 2255 relief, rejecting Jackson's argument that, had he known he was facing life sentences on those counts, he would have pursued a plea deal. We affirm.

## I. *Background*

"At the time [Jackson was indicted for Counts 1 through 5], he had committed two prior felony drug offenses." *Jackson*, 341 F. App'x at 263. The evidence at trial showed that informants purchased crack cocaine from Jackson during four separate controlled buys. *Id*. Specifically, testimony at trial revealed that "(1) Jackson sold the crack cocaine directly on three occasions, (2) on another occasion Jackson directed an associate to make the sale, and (3) each sale occurred within 1000 feet of a public playground or school. Each controlled drug buy was recorded." *Id*. After the last transaction, officers had seized money from Jackson and an associate. *Id*.

---

[2]*See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 851, and 860(a).

[3]*See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 851, 860(a), and 18 U.S.C. § 2.

[4]The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

"A jury convicted Jackson on all counts." *Id*. at 264. The district court sentenced Jackson "to life in prison on the conspiracy count, which was the mandatory minimum, and to concurrent terms of 360 months' each on the remaining counts." *Id*. Two days after sentencing, the government filed a notice to the court regarding a potential sentencing issue. In the notice, the government informed the court "that the sentencing statutes involved in this case (21 U.S.C. § 841(b)(1) and 21 U.S.C. § 860(a), and particularly language in § 841(b)(1)(A) which references § 860) appear to mandate a sentence of life imprisonment on Counts 2 through 5 in this case." Following this notice, the district court held another sentencing hearing. At that hearing, the district court, the government, and Jackson's trial counsel acknowledged that Jackson had only been advised that he faced a sentence of one to 60 years' imprisonment on the drug-distribution charges. Therefore, Jackson was not on notice that he faced life imprisonment on Counts 2 through 5. Jackson's trial counsel acknowledged the lack of notice, explaining:

> I don't believe at any point in time [Jackson] understood he was facing Counts 2 through 5, and I base that on the fact that nobody involved in this case knew that he was facing life. It was only after sentencing that the opinion was arrived at.
>
> And I know that in the multiple and numerous discussions that [the government] and I had, we always talked about really his best-case scenario at trial would be to try and beat Count 1 and maybe get convicted of Counts 2 through 5 because on Counts 2 through 5 those were the counts where they had controlled buys on the defendant and I can say honestly today now with the benefit of 20/20 but he didn't have a prayer of beating those counts. There was no—I can't see any reasonable jury that I've ever been in front of—and I've been in front of a number of them—ever acquitting someone where he's caught red-handed on videotape.

> So, you know, maybe it would have changed his mind, Judge, if he would have known. Maybe he would have cooperated. Maybe he'd be in a different position.

After noting that three of the four drug-distribution counts involved the distribution of "[l]ess than a gram" of crack cocaine, the district court stated that it was

> not going to give anybody life for that. The circuit may end up doing it, but I'm not going to do it, so the ruling of the Court is that the sentence will not be changed, and the sentence that was [previously] pronounced . . . will stand, and we'll put out a judgment just like that. Your exceptions are noted.

Therefore, the court refused to apply the statutory mandatory minimum on Counts 2 through 5.

Jackson appealed his conviction, arguing that the district court erred in denying his motion for judgment of acquittal or new trial. *Jackson*, 341 F. App'x at 263. This court affirmed. *Id.*

Thereafter, Jackson timely filed his 28 U.S.C. § 2255 petition with the district court. In his supplemental petition, Jackson argued that his trial counsel failed to properly inform him about the mandatory minimum life sentences for Counts 2 through 5. According to Jackson, if he had known that he potentially faced five life sentences, he would have pursued a plea deal. The district court held a hearing on Jackson's § 2255 motion. At the habeas hearing, Jackson's trial counsel explained that his trial strategy was not to contest Counts 2 through 5 but to contest Count 1—the conspiracy count—based on the belief that Jackson could only get life imprisonment on Count 1. Counsel acknowledged that he failed to advise Jackson that he could be subject to potential life sentences on Counts 2 through 5.

But Jackson's trial counsel also confirmed that he explained to Jackson "that he was facing life in prison" on Count 1 and that cooperation with the government was an option. Specifically, counsel testified:

> I don't know if there was any real realistic possibility that the government would utilize the information, but I do know that [government counsel] did tell me that [the government was] willing to sit down and talk to [Jackson]. . . . [Government counsel] set up and arranged for the meeting with Abdul Turner because Abdul Turner was a relation, I don't remember in what capacity, but to Mr. Jackson. And we had a meeting in the marshal's holding facility in the courthouse there in Sioux City. And Mr. Turner pleaded with Mr. Jackson, told him that it was a very bad idea that he was going to go in to testify. He even went on to tell Mr. Jackson, look, I'm going to get time off testifying against you, but I will forego that, I'll give that up if you'll just plead guilty and cooperate, so basically the advice that Mr. Turner was giving Mr. Jackson was contrary to his own best interest.

> He specifically told [Jackson] that it's a poor idea to go to trial on the conspiracy and [Turner] knew he was going to have to go in and testify about [it] in court and [Jackson] ultimately probably would be convicted, which he was.

> So I know that cooperation was discussed. It was discussed at length with him.

Additionally, counsel explained that although the "primary objective" was to contest Count 1 "because without a doubt [Jackson] was facing life on Count 1," he could say "unequivocally [that] there was no way [Jackson] was going to plead to anything. . . . this guy wasn't going to plead to anything."

Jackson testified that although trial counsel informed him that he faced life imprisonment on Count 1, he nevertheless chose to go to trial. Jackson could not recall whether he discussed the potential penalties on the drug-distribution counts

-5-

with his trial counsel or what the potential penalties were on those counts. He admitted that his memory was unclear as to the criminal proceedings and further admitted that he did not "know what [he] would have d[one] if [he had] known [that he] was facing life on all five charges." During cross-examination, the following exchange occurred between the government and Jackson:

> Q. And did it really matter to you what you were facing on the distribution counts if you were facing life on the big count or the conspiracy count?
>
> A. I mean that's why I was going to trial, to—
>
> Q. To try to beat the big charge?
>
> A. Yes, sir, to beat *all the charges*.
>
> Q. So would it be fair to say that . . . in consulting with your attorney, you made the decision to go to trial *on all charges* to try to beat *all of them*?
>
> A. Yes, sir.

(Emphases added.)

Jackson also indicated that he *did not* believe "that the evidence was strong [against him] on . . . Counts 2 through 5, the distribution charges." Nor did he "think [that] the evidence was strong against [him] on the conspiracy charge." He was "fighting all the charges," despite the fact that, on "the distribution counts, the evidence presented included audio and video recordings."

Following the hearing, the district court denied Jackson § 2255 relief but granted a certificate of appealability on Jackson's claim.

## II. *Discussion*

Jackson asserts that his trial counsel was ineffective for failing to advise him that *all* of the counts against him carried mandatory life sentences. Although Jackson concedes that the government never offered him a plea agreement, he contends that cooperation with the government was always an available option. He argues that his trial counsel's misinformation regarding potential sentences influenced his decision not to cooperate with the government and instead go to trial on all counts. According to Jackson, had he known that he was facing life imprisonment on all of the counts and that being acquitted on all of them was virtually impossible, a reasonable possibility exists that he would have chosen to cooperate with the government in lieu of trial.

"In reviewing a denial of a § 2255 motion, we review the district court's legal conclusions *de novo* and its factual findings for clear error." *Gregg v. United States*, 683 F.3d 941, 944 (8th Cir. 2012) (quotation, alteration, and citation omitted).

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In the present case, the district court found that trial counsel's "representation was deficient" because counsel "failed to advise [Jackson] that he could be subject

-7-

to potential life sentences on [C]ounts 2 through 5." *Jackson v. United States*, No. 10–CV–4124–DEO, 2012 WL 1192832, at *6 (N.D. Iowa Apr. 10, 2012) (unpublished) (citing *Teague v. Scott*, 60 F.3d 1167, 1171 (5th Cir. 1995) ("Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland*.")). "Because neither party challenges the district court's finding that [Jackson] satisfies *Strickland*'s first prong—whether counsel's representation was deficient—we assume without deciding that [Jackson] has satisfied this prong." *Gregg*, 683 F.3d at 944.

> To satisfy *Strickland*'s second prong, a defendant must "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693, 104 S. Ct. 2052. "[T]he defendant must show that [his or her counsel's error] actually had an adverse effect on the defense." *Id*. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," but rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 693–94, 104 S. Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S. Ct. 2052.

*Id*. at 944–45 (alterations in original).

Here, Jackson admitted at the § 2255 hearing that although trial counsel informed him that he faced life imprisonment on Count 1, he nevertheless chose to go to trial. Although he could not recall whether he discussed the potential penalties on the drug-distribution counts with his trial counsel or what the potential penalties were on those counts, he admitted that it really did not matter to him what sentence he was "facing on the distribution counts if [he] w[as] facing life on the . . . conspiracy count" because he was going to trial to "beat all the charges." He also did not believe that the evidence was strong against him on *any* of the charges,

despite the fact that, on "the distribution counts, the evidence presented included audio and video recordings."

On this record, Jackson cannot show a reasonable probability that he would not have proceeded to trial had he known that Counts 2 through 5 carried potential life sentences. Jackson knew for certain that he faced a life sentence as to Count 1 and did not pursue a plea agreement with the government. Furthermore, Jackson's pronouncement that he was going to trial to "beat all the charges" runs contrary to his claim that he would have accepted a plea deal had the government offered him one. As the district court noted, Jackson's trial counsel even acknowledged that Jackson "was dead set on going to trial and would not have accepted a deal, regardless of what was offered him." *Jackson*, 2012 WL 1192832, at \*6. Jackson's trial counsel testified that he "discussed at length" with Jackson the option of cooperating with the government and detailed the government's attempt to obtain Jackson's cooperation.

We agree with the district court that "[t]he fact is that, though [Jackson] was facing, at best, life in prison on [C]ount 1 if convicted and, at best, 10 years on [C]ounts 2 through 5 if convicted, he refused the Government's offer to *pursue* a cooperation agreement." *Id*. (emphasis added). Moreover, Jackson has conceded on appeal that the government *never* offered him a plea agreement, and he has no right to be offered one. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012) ("It is, of course, true that defendants have 'no right to be offered a plea . . . nor a federal right that the judge accept it.'") (alteration in original) (quoting *Missouri v. Frye*, 132 S. Ct. 1399, 1388–89 (2012)).

## III. *Conclusion*

Accordingly, we affirm the district court's denial of Jackson's § 2255 relief.

_____